OTTIS B. CROCKER, JR. AND KAY E. CROCKER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27245-86.    Filed May 8, 1989.

*Ottis B. Crocker, Jr.,* pro se.
*Helen C. T. Smith,* for the respondent.

SCOTT, *Judge:* Respondent determined additions to petitioners' income taxes for the years and in the amounts as follows:

| Year | Additions to tax | | |
| | Sec. 6651(a)(1) [1] | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
| --- | --- | --- | --- |
| 1981 | $8,329.33 | $3,506.88 | * |
| 1982 | 5,261.97 | 2,484.09 | * |

*50% of the interest due on the underpayments.

The issues for decision are: (1) Whether petitioners are liable for additions to tax under section 6651(a)(1) because they failed to timely file their Federal income tax returns for each of the years 1981 and 1982; (2) whether petitioners are liable for additions to tax under section 6653(a)(1) and section 6653(a)(2) for the years 1981 and 1982 because their underpayment of tax was due to negligence or intentional disregard of the rules and regulations.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

During 1981 and 1982 and at the time of the filing of the petition in this case, petitioners resided in Bruce, Mississippi. During 1981 and 1982, Mrs. Crocker was employed by the Calhoun County, Mississippi Board of Education as a teacher. Mr. Crocker was an attorney licensed to practice law in the State of Mississippi. He was a sole practitioner and maintained an office in Bruce, Mississippi.

Beginning in 1979 and continuing through 1981 and 1982, Mr. Crocker performed legal work for certain oil companies which he referred to as "day work." His job was to search county land records and attempt to buy blocks of leases

[1] Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years here in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

from the record owners of land. In 1981 and 1982, this "day work" kept Mr. Crocker out of town during most week days. On the weekends, Mr. Crocker would return to Bruce and attempt to maintain his normal practice of law. Mr. Crocker was very busy during this period and often requested extended filing deadlines. Mr. Crocker was also involved in an automobile accident in early 1982 which caused him to fall further behind in his work.

During 1981 and 1982, petitioners earned interest, dividends, and profits from several financial institutions, corporations, and partnerships. Petitioners received Forms 1099 disclosing the amounts earned. In 1981 and 1982, and for several years prior thereto, Mrs. Crocker held an interest in Embry Operations, a family partnership controlled by her father, Mr. Embry. Mr. Embry prepared Embry Operations' K-1 partnership returns and the Forms 1099 issued by the partnership. Mr. Embry lived in Grenada, Mississippi, which is approximately 50 miles from Bruce. Mr. Embry, on behalf of Mrs. Crocker, reinvested her pro rata amount earned from Embry Operations in the partnership.

Petitioners did not keep adequate books of account or records. Mr. Crocker's secretary, Ms. Erma Fay Runer (Ms. Runer), created monthly files in which she would place Mr. Crocker's business and personal bills. However, many of petitioners' financial records, such as the Forms 1099 they received in 1981 and 1982, had been lost prior to the trial of this case.

Mr. Crocker prepared petitioners' 1980, 1981, and 1982 Federal income tax returns. On their 1980 Federal income tax return, petitioners reported total interest and dividend income of $32,493.28. In addition, petitioners reported, on Schedule C, total professional income for 1980 of $8,983.42. They also reported net income of $3,095 from Embry Operations. Relying on the advice Mr. Crocker received from an insurance salesman who sold him a Keogh plan, petitioners deducted $7,500 which Mr. Crocker contributed to the plan in 1980. Petitioners reported total tax due for 1980 of $20,756.84.

On January 21, 1982, petitioners filed an estimated tax declaration for 1981 and paid $8,000 towards their estimated 1981 tax liability. On or before April 15, 1982,

petitioners requested and received from respondent a 2-month automatic extension of the due date of their 1981 return. On the Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return," which they filed pursuant to section 6081 and section 1.6081-4, Income Tax Regs., petitioners estimated their 1981 income tax liability to be $12,000. They paid $2,000 towards this estimated liability.

On June 15, 1982, petitioners requested an additional extension of the time within which to file their 1981 return. They paid an additional $1,000 towards their estimated 1981 tax liability. Respondent granted petitioners' request and extended the filing deadline to July 15, 1982.

On July 15, 1982, petitioners filed their 1981 Federal income tax return. Petitioners reported total interest and dividend income of $87,737.34. In addition, petitioners reported, on Schedule C, total professional income of $21,154.80. They also reported a net loss of $242 from Embry Operations and took a deduction of $7,500 for amounts contributed to Mr. Crocker's Keogh plan. They computed their 1981 income tax liability as $41,559.08. Petitioners claimed credit for amounts previously paid towards their estimated 1981 income tax liability, $1,619.93 withheld during 1981 from Mrs. Crocker's wages from teaching, and overpayments of their 1980 income tax liability. After these credits, they showed $22,650.81 as tax due on their 1981 income tax returns and paid this amount.

On December 20, 1982, after being contacted by respondent's agents, petitioners submitted an amended return for their 1980 tax year. The amended return was prepared, after extensive review of petitioners' records, by Mr. Boyd M. Edwards, a long-time acquaintance of petitioners and a certified public accountant. On their amended return, petitioners reported total interest and dividend income of $75,810.32. Petitioners continued to claim entitlement to a $7,500 deduction for their 1980 contribution to Mr. Crocker's Keogh plan. Petitioners submitted a check for $28,454 in payment of their increased tax liability and interest due on the delinquent amount.

On or before April 15, 1983, petitioners requested and received an automatic extension of time to file their 1982

income tax return to August 15, 1983.[2] On the Form 4868 which they filed, petitioners estimated their 1982 income tax liability to be $22,000 and paid $20,403.24 towards that estimated tax liability.

On August 17, 1983, petitioners filed their 1982 Federal income tax return. Petitioners reported total interest and dividend income of $90,424.16. They also reported, on Schedule C, professional income of $11,210.52. In addition, petitioners reported $3,495 in net income from Embry Operations and claimed a $7,500 deduction for amounts contributed to Mr. Crocker's Keogh plan. They reported a total 1982 income tax liability of $36,214.32. Petitioners remitted payment of $14,214.32 with their 1982 return and, this, along with their estimated tax payments plus amounts withheld from Mrs. Crocker's teaching salary, fully satisfied their 1982 tax liability, as reported on their return.

On March 6, 1984, respondent's agent met with petitioners to discuss their 1981 income tax liability. On this same date, respondent began an audit of petitioners' 1982 income tax return. Petitioners appointed Mr. Edwards as their representative and granted him powers of attorney with respect to their 1981 and 1982 income tax liabilities on July 16, 1984, and November 8, 1984, respectively.

As a result of the audit of petitioners' 1981 and 1982 tax returns, respondent's agent proposed an increase in petitioners' 1981 income tax of $28,578.49 and an increase in petitioners' 1982 income tax of $13,374.21 in a report dated February 14, 1985. The proposed increases in tax resulted from the following adjustments:

|  | 1981 | 1982 |
|---|---|---|
| Interest and dividends | $21,093.30 | $5,078.22 |
| Schedule C net profit | 20,155.85 | 12,188.91 |
| Schedule E net profit | (300.00) | (900.00) |
| Oil lease | --- | 554.00 |
| Capital gain/loss adjustment | --- | 188.43 |
| Keogh | 7,500.00 | 7,500.00 |
| Two-earner deduction | --- | (516.78) |
| Taxes | --- | 563.00 |
| Total | 48,449.15 | 24,655.78 |

[2]Prior to Dec. 31, 1982, in the case of individuals required to file Form 1040 income tax returns, sec. 1.6081-4, Income Tax Regs., provided for an automatic 2-month extension of the due date of such return. For taxable years ending on or after Dec. 31, 1982, the 2-month automatic extension period provided for in sec. 1.6081-4, Income Tax Regs., was lengthened to 4 months. T.D. 7885, 1983-1 C.B. 338, 339. Thus, petitioner's 1981 tax year is governed by the 2-month automatic extension and their 1982 tax year is governed by the 4-month extension.

Petitioners agreed to all of the above adjustments to their income as reported on their 1981 and 1982 tax returns. On April 11, 1985, petitioners paid the increased taxes proposed by respondent's agent for 1981 and 1982. They also extended the period for assessment of their 1981 income tax to April 15, 1986. On October 16, 1985, petitioners indefinitely extended the period for assessment of both their 1981 and 1982 income taxes.

On April 16, 1986, respondent issued a statutory notice of deficiency to petitioners with respect to their 1981 and 1982 tax liabilities. Respondent increased petitioners' 1981 and 1982 taxable income by $48,449.15 and $24,655.78, respectively, in accordance with adjustments to which petitioners had previously agreed. Respondent also determined that petitioners were liable for additions to tax under section 6651(a)(1), section 6653(a)(1), and section 6653(a)(2) for each of the calendar years 1981 and 1982.

## OPINION

Section 6072(a) provides that individuals who compute their taxes on the basis of the calendar year must file their Federal income tax return by the 15th day of April following the close of such calendar year. Section 6081(a) provides that:

The Secretary *may* grant a reasonable extension of time for filing any return, declaration, statement, or other document required by this title or by regulations. * * * [Emphasis supplied.]

Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return by its due date determined with regard to any extension of time for filing.[3]

---

[3]Sec. 6651(a)(1) provides that:

SEC. 6651(a). ADDITION TO THE TAX.—In case of failure—

(1) to file any return required under the authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (*determined with regard to any extension of time for filing*), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * * [Emphasis supplied.]

The addition to tax is imposed on the amount required to be shown as tax on the return, reduced by the amount of tax, "which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return, * * *." Sec. 6651(b)(1).

In this case, petitioners were granted automatic extensions of time within which to file their 1981 and 1982 returns and filed these returns within such extended periods. Respondent, however, takes the position that the applications for automatic extensions were invalid since petitioners did not comply with the regulations for obtaining such extensions and, therefore, the automatic extensions granted to petitioners were void.

Pursuant to the authority granted in section 6081(a), the Treasury has promulgated section 1.6081-4, Income Tax Regs., which provides, in part, that:

(a) *In general.* (1) An individual who is required to file an income tax return on Form 1040 for any taxable year ending on or after December 31, 1982, shall be allowed an automatic 4-month extension of time to file such return after the date prescribed for filing of the return *only if* the requirements contained in subparagraphs (2), (3), and (4) of this paragraph are met. * * * (For returns filed for taxable years ending on or after December 31, 1971 and before December 31, 1982, the extension allowed by this paragraph shall be a 2-month extension). [Emphasis supplied.]

In order to obtain the automatic extension referred to in the above-quoted part of the Regulations, a taxpayer must file a signed Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return." Sec. 1.6081-4(a)(2), Income Tax Regs. The application must be filed with the appropriate internal revenue officer on or before the due date prescribed for filing the taxpayer's return. Sec. 1.6081-4(a)(3), Income Tax Regs. Section 1.6081-4(a)(4), Income Tax Regs., provides that the application:

must show the full amount *properly estimated* as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount *properly estimated* as tax which is unpaid as of the date prescribed for the filing of the return. [Emphasis supplied.]

Section 1.6081-4(b), Income Tax Regs., provides that the granting of an automatic extension of time within which the taxpayer may file an income tax return does not operate to extend the time for payment of any tax due on such return. Thus, a taxpayer who computes his taxes on the basis of the calendar year must generally pay all such taxes by the 15th day of April following the close of such calendar year, regardless of whether he has been granted an extension of

time to file his return. Sec. 6151(a); sec. 6072(a), Income Tax Regs.

Section 1.6081-4(c), Income Tax Regs., provides that the District Director or the Director of a Service Center may, at his discretion, terminate an automatic extension previously granted by mailing a notice of termination to the taxpayer at least 10 days prior to the termination date.

The record shows that petitioners filed Forms 4868 requesting extensions of time within which to file their 1981 and 1982 income tax returns, that they filed the Forms 4868 within the time prescribed for filing their 1981 and 1982 income tax returns, and that they filed the Forms 4868 with the appropriate internal revenue officer. Petitioners' applications for an automatic extension were not rejected and were not terminated at any time prior to the dates on which petitioners filed their respective 1981 and 1982 returns.

However, petitioners underestimated their true 1981 tax liability by approximately $58,000 and their true 1982 tax liability by approximately $27,000. Respondent contends that the Forms 4868 which petitioners filed were invalid and the extensions received thereon were void ab initio because of petitioners' failure to properly estimate their tax liability as required by section 1.6081-4(a)(4), Income Tax Regulations. Respondent argues that for this reason, petitioners were required, under section 6072(a), to file their 1981 and 1982 income tax returns by April 15, 1982, and April 15, 1983, respectively, and their failure to do so causes them to be liable for additions to tax under section 6651(a)(1).

In arguing that petitioners' Forms 4868 were invalid because they failed to "properly estimate" their 1981 and 1982 tax liabilities, respondent places a great deal of emphasis on the fact that petitioners' estimates of their 1981 and 1982 tax liabilities fell far short of their true tax liabilities for those years. In our view, a mere comparison of estimated tax liabilities with true tax liabilities will not reveal whether petitioners' estimates were "proper." An estimate is no more than that. It is, "A valuing or rating by the mind, without actually measuring, weighing, or the

like. A rough or approximate calculation only." Black's Law Dictionary, 494 (5th ed. 1979).

To require exactitude in the estimation called for under section 1.6081-4(a)(4), Income Tax Regs., would be unreasonable. The taxpayer would have no need for an extension of time within which to file his return if he could determine his true tax liability at the time he submits the Form 4868. The mere fact that petitioners underestimated their 1981 and 1982 tax liabilities, standing alone, does not cause their applications to be invalid and the automatic extensions to be void. See *Hudspeth v. Commissioner,* T.C. Memo. 1985-628.

Respondent argues that the facts in this case show that petitioners failed to properly estimate their 1981 and 1982 tax liabilities because of their own inattention, indifference, and poor recordkeeping. Respondent concludes that this is the reason for petitioners' gross understatement of their tax liability. Respondent argues, in essence, that petitioners were grossly negligent in the preparation of their requests for extensions. They did not make a bona fide or reasonable effort to locate or obtain the information necessary for a proper estimation of their 1981 and 1982 tax liabilities. Therefore, respondent concludes, petitioners' Forms 4868 were invalid and the extensions void.

Petitioners contend that their estimates of their 1981 and 1982 tax liabilities were not improper given the circumstances which existed at the times the estimates were made and the requests for extension submitted. Petitioners admit that they kept poor records during the years at issue. They admit that they lost many of the Forms 1099 which would have disclosed their dividend and interest income. Having the Forms 1099 would have enabled them to more reasonably approximate their tax liabilities. They also admit that Mr. Crocker mistakenly took certain deductions for expenses paid in connection with the "day work" he performed even though the oil companies for which he worked had reimbursed him for these expenses and he had not included the reimbursements in income.

However, petitioners claim that Mr. Crocker was grossly overworked during 1981 and 1982, and that the automobile accident in which he was involved only exacerbated the

problem. They also claim that information relating to Mrs. Crocker's income from Embry Operations was in the hands of Mr. Embry, who lived approximately 50 miles away from petitioners, and was, therefore, not available to petitioners when they made their estimates. Finally, they claim that they justifiably relied on the advice of the insurance salesman who sold Mr. Crocker his Keogh plan in deducting amounts contributed to the plan in 1981 and 1982. Petitioners conclude that, in light of the information readily available to them, they properly estimated their 1981 and 1982 tax liabilities and, therefore, their Forms 4868 were valid.

In our view, a taxpayer should be treated as having "properly estimated" his tax liability, within the meaning of section 1.6081-4(a)(4), Income Tax Regs., when he makes a bona fide and reasonable estimate of his tax liability based on the information available to him at the time he makes his request for extension. See *Berlin v. Commissioner,* 59 F.2d 996 (2d Cir. 1932), affg. a Memorandum Opinion of this Court. This requires the taxpayer to judge or determine his tax liability generally, but carefully. Thus, if a taxpayer, in his Form 4868 request for automatic extension, estimated his tax liability to be zero, even though he had, at the time he submitted the request, ample evidence discrediting the estimate, the Form 4868 would be invalid.

Furthermore, in order to be treated as having "properly estimated" his tax liability, we conclude that the taxpayer must make a bona fide and reasonable attempt to locate, gather, and consult information which will enable him to make a proper estimate of his tax liability. In *Berlin v. Commissioner, supra,* an extension was requested on behalf of an ill taxpayer by his accountant. The Commissioner agreed to extend the time for filing of the taxpayer's return, but only if the accountant filed a "tentative return" by April 15th disclosing the taxpayer's estimated tax liability and paid 25-percent of the amount shown due on such return. The accountant made no attempt to ascertain the tax due or consult the taxpayer's books which were available for inspection. Instead, the "tentative return" simply disclosed an estimated tax liability of zero.

The Second Circuit concluded that, because the accountant had not attempted to consult available information, he had not made a bona fide attempt to estimate the tax due or comply with the conditions of the proposed extension. Thus, the accountant's failure to file the taxpayer's return within the prescribed time was due to willful neglect and not reasonable cause. The taxpayer was chargeable with this neglect and was, therefore, liable for a failure to file addition under section 1003 of the Revenue Act of 1924.[4] *Berlin v. Commissioner, supra* at 997.

Similarly, in the instant case, it is clear that petitioners did not make a bona fide attempt to consult the information which was within their possession or which was readily available to them in order to estimate the tax due for 1981 and 1982. Petitioners do not contend that they failed to receive any Forms 1099 for 1981 or 1982. These forms should have alerted petitioners to the large amounts of interest and dividend income they received during the years at issue. Mr. Crocker testified that many of the Forms 1099 had been lost or misplaced. However, petitioners did not show that the forms were not within their possession or readily available to them at the time they completed their extension requests.

In any event, we conclude that petitioners are required to make a reasonable effort to secure further information where necessary. If they had lost Forms 1099, they could have attempted to contact the appropriate entities in order to replace this lost information. They did not. If information relating to Embry Operations was not forthcoming, they could have attempted to contact Mr. Embry in order to obtain the information within his possession. They did not. If Mr. Crocker was confused as to whether he was to be reimbursed for certain expenditures, he could have contacted the companies for which he worked and gotten a clearer understanding of his employment arrangement. He did not. In other words, petitioners failed to make even a minimal effort to consult or secure the information neces-

---

[4]In *Haywood Lumber & Mining Co. v. Commissioner,* 178 F.2d 769, 771 (2d Cir. 1950), modifying 12 T.C. 735 (1949), the 2d Cir. retreated from its holding in *Berlin v. Commissioner,* 59 F.2d 996 (2d Cir. 1932), that the taxpayer is chargeable with the negligence of his agent, but never questioned its underlying holding that the accountant had failed to make a bona fide estimate of the tax due.

sary to make a bona fide and reasonable estimate of the tax due from them in 1981 and 1982.

We do not mean to imply that a taxpayer must assemble an exact picture of his income prior to submitting his request for extension. Indeed, the very reason behind many extension requests is to give the taxpayer time to obtain information necessary for the proper computation of his income tax liability. However, neither can a taxpayer wait until the due date of his return and then submit an extension request which contains an estimate having no basis in law or fact. In the instant case, petitioners' 1981 estimate was less than one-fifth of their true tax liability and their 1982 estimate was less than one-half of their true tax liability. If petitioners had consulted *any* of their financial records, surely they would have realized that these were unrealistic estimates.

Since petitioners failed to "properly estimate" their tax liability, the Forms 4868 on which they requested extensions of time within which to file their 1981 and 1982 income tax returns were invalid.

It is clear, however, that petitioners received the requested extensions based on the Forms 4868 they filed. Petitioners contend that because of this fact, respondent may not treat these extensions as void ab initio, and consider petitioners' 1981 and 1982 income tax returns to be due on April 15, 1982, and April 15, 1983, respectively.

Most taxpayers who file Forms 4868 do make bona fide and reasonable estimates of their tax liabilities when applying for the automatic extension under section 1.6081-4, Income Tax Regs. These taxpayers justifiably rely on the receipt of such extensions to postpone preparing their income tax returns. If respondent is permitted to void these extensions, taxpayers may belatedly face the prospect of an addition to tax for failure to file under section 6651(a)(1) unless they can make a satisfactory showing that their estimates were proper under the circumstances or that their failure to file was otherwise due to reasonable cause and not willful neglect. This undoubtedly would be perceived as unfair by taxpayers and would undermine the granting of extensions pursuant to section 6081.

Furthermore, even a taxpayer who underestimates his tax may needlessly delay the filing of his return up to 4 months beyond the initial filing date in reliance on the extension which he believed he had obtained when he might have been able to file the return within a month or 2 from its original due date. If respondent voids the extension and asserts an addition to tax under section 6651(a)(1), the addition to tax will be larger because of the taxpayer's reliance on the 4-month extension.

On the other hand, respondent cannot be expected to examine in detail every request for automatic extension prior to his automatic approval of the request. Form 4868, as presently structured, does not even require the taxpayer to submit a detailed accounting upon which such an examination could be based. Although Form 4868 could be restructured so as to require more precise information, forcing respondent to conduct such a detailed examination prior to the automatic approval of the extension would be as unreasonable as requiring the taxpayer to determine his tax liability with exactitude prior to submitting his request for extension. It would also unreasonably delay the process of extension approval and further undermine the granting of extensions pursuant to section 6081.

In *United States v. Boyle,* 469 U.S. 241, 248 (1985), the Supreme Court stated:

Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish necessary results. The government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work on any basis other than one of strict filing standards. Any less rigid standard would risk encouraging a lax attitude toward filing dates. * * * [Fn. refs. omitted.]

The provision for automatic extensions was not, in our view, intended to encourage a "lax attitude" toward filing dates, and should not be available to a taxpayer who does not comply with the conditions placed on obtaining such extensions. We hold that respondent may properly void automatic extensions of filing deadlines previously obtained where the taxpayer's Form 4868 is invalid because of a failure to properly estimate tax liability. To hold otherwise would force respondent to conduct a detailed examination of

every extension request prior to automatic approval of that request. Such a requirement is not realistic.

While petitioners do not expressly argue that respondent should be estopped from denying the validity of the extension, regardless of whether the taxpayer properly estimated his tax liability, some of their arguments suggest that they take such a position. However, one of the prerequisites for application of the doctrine of estoppel is that the taxpayer claiming the benefits of the doctrine must be ignorant of the true facts. *McGuire v. Commissioner*, 77 T.C. 765, 779 (1981); *Underwood v. Commissioner*, 63 T.C. 468, 477-478 (1975), affd. 535 F.2d 309 (5th Cir. 1976). Where a taxpayer does not make a bona fide or reasonable estimate of his tax liability (based on the information available to him) or does not make a bona fide or reasonable attempt to locate or secure the information necessary to a proper estimate of his tax liability, the doctrine of estoppel does not prevent respondent from voiding a previously allowed extension.

If respondent does void an automatic extension for failure by a taxpayer to properly estimate, the taxpayer is liable for an addition to tax under section 6651(a)(1) unless he can establish that the failure to file a return by the date prescribed by law (determined without regard to the voided extension) is due to reasonable cause and not due to willful neglect.

At trial and on brief, petitioners argued only that their returns were filed within the time prescribed by law, as extended by respondent. They did not address the possibility that their extensions might be voided and did not present any evidence specifically intended to show that their failure to file their returns by April 15th was due to reasonable cause and not due to willful neglect. However, it appears that petitioners' general arguments that Mr. Crocker was overworked and did not have ready access to information necessary to prepare petitioners' returns may be intended as an argument that the failure to file was due to reasonable cause and not willful neglect.

In order to avoid the addition to tax under section 6651(a)(1), a taxpayer must show both reasonable cause and a lack of willful neglect. *United States v. Boyle, supra* at

245. The term "willful neglect" implies a conscious, intentional failure to file or reckless indifference to the obligation to file. *United States v. Boyle, supra* at 245. A failure to file is due to "reasonable cause" if the taxpayer exercised ordinary business care and prudence and was, nevertheless, unable to file his return within the date prescribed by law. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; *United States v. Boyle, supra* at 246; *Estate of Paxton v. Commissioner,* 86 T.C. 785, 819 (1986). Whether the elements which constitute reasonable cause or willful neglect are present in any given situation is a question of fact. *United States v. Boyle, supra* at 249, n. 8; *Coates v. Commissioner,* 234 F.2d 459, 462 (8th Cir. 1956).

We have repeatedly held that a taxpayer is not excused from timely filing his income tax return merely because he is overworked. See, e.g., *Odend'hal v. Commissioner,* 80 T.C. 588, 618 (1983), affd. on this issue and remanded on other grounds 748 F.2d 908 (4th Cir. 1984); *Dustin v. Commissioner,* 53 T.C. 491, 507 (1969), affd. 467 F.2d 47 (9th Cir. 1972). A person exercising ordinary business care and prudence would not take on a workload that would prohibit him from fulfilling his own legal obligations within the required time. *Dustin v. Commissioner, supra* at 507.

Petitioners' claim that much of the information necessary to prepare their returns was not readily available is simply not supported by the evidence. As noted previously, petitioners made no showing that the Forms 1099 were lost prior to the time their returns were due to be filed. Furthermore, as also noted previously, petitioners made no effort to replace the information which had been lost or obtain information which was not forthcoming. In any event, we have previously held that the unavailability of information does not constitute reasonable cause. *Electric & Neon, Inc. v. Commissioner,* 56 T.C. 1324, 1342-1343 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974).

Finally, we hold that reliance on a voided automatic extension does not constitute reasonable cause for a taxpayer's failure to file his return in a timely manner where the taxpayer fails to properly estimate his tax in obtaining such extension. To rule otherwise would render our holding as to extensions meaningless since the taxpayer could always

avoid any adverse consequences of his improper estimate by simply producing the approved extension request. Since we have found that there was no reasonable cause for petitioners' failure to file their 1981 and 1982 returns by April 15, 1982, and April 15th, 1983, respectively, they are liable for an addition to tax under section 6651(a)(1) and we need not reach the question of whether petitioners' failure was due to willful neglect. *United States v. Boyle, supra* at 245; *Electric & Neon, Inc. v. Commissioner, supra* at 1342.

Petitioners contend that, even if respondent's determination that they are liable for an addition to tax under section 6651(a)(1) is correct, the computation of the addition is incorrect.[5] Petitioners claim that the amount of tax upon which the section 6651(a)(1) addition for 1981 is computed should be reduced by amounts paid by petitioners on or before July 15, 1982, the due date of their 1981 return, as initially extended by respondent. Similarly, they claim that respondent's computation of their section 6651(a)(1) addition for 1982 should have taken into account the full amount of taxes paid by petitioners on or before August 17, 1983, the due date of their 1982 return, as initially extended by respondent.

Section 6651(a)(1) provides that, in the case of a failure to file a required return which is not due to reasonable cause, "there shall be added to the *amount required to be shown as tax* on such return 5 percent of the amount of *such* tax." (Emphasis supplied.) The addition is imposed on the correct amount of tax which should have been reported on the taxpayer's return and this clearly includes tax arising out of any deficiency. *Fischer v. Commissioner,* 50 T.C. 164, 177 (1968).

---

[5]Respondent computed the sec. 6651(a)(1) addition for petitioners' 1981 taxable year by first subtracting $11,619.13, the amount of tax paid by petitioners on or before Apr. 15, 1982, from $70,137.57, petitioners' 1981 total tax liability as determined by respondent and conceded by petitioners. Respondent then multiplied the resultant amount, $58,518.44, by 15 percent, or 5 percent for each of the 3 months that petitioners' failure to file continued. The sec. 6651(a)(1) addition as thus computed is $8,239.33.

Similarly, respondent computed the sec. 6651(a)(1) addition for petitioners' 1982 taxable year by first subtracting $22,000, the amount of tax paid by petitioners on or before Apr. 15, 1983, from $49,681.88, petitioners' 1982 total tax liability as determined by respondent and conceded by petitioners. The amount unpaid by Apr. 15, 1983, $27,681.88, was then multiplied by 20 percent, or 5 percent for each of the 4 months that petitioners' failure continued. The sec. 6651(a)(1) addition as thus computed is $5,536.38.

However, section 6651(b)(1) provides that, for purposes of computing the addition under section 6651(a)(1), "the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before *the date prescribed for payment* of the tax." (Emphasis supplied.)

As is apparent from the above quoted passage, the correct amount of tax, upon which the section 6651(a)(1) addition is based, is reduced only by amounts paid prior to the date prescribed for payment of such tax. Section 6151(a) states that:

when a return of tax is required under this title or regulations, the person required to make such return shall * * * pay such tax at the time and place fixed for filing the return (*determined without regard to any extension of time for filing the return*). [Emphasis supplied.]

Section 6072(a) provides that taxpayers, such as petitioners, who make their returns on the basis of a calendar year, must file such returns by the 15th day of April following the close of such calendar year. Therefore, petitioners were required to pay their 1981 and 1982 taxes by April 15, 1982, and April 15, 1983, respectively. Even if they had obtained valid extensions of time within which to file their returns, this would not extend or delay the date on which they were required to pay the tax shown on their returns. Sec. 6151(a). Sec. 1.6081-4(b), Income Tax Regs. Therefore, we uphold respondent's computation of the additions to tax under section 6651(a)(1).

The final issue is whether petitioners are liable for additions to tax under section 6653(a)(1) and section 6653(a)(2). Section 6653(a)(1) provided that if any portion of an underpayment of any tax is due to negligence or intentional disregard of the rules or regulations, the taxpayer is liable for an addition to tax equal to 5 percent of the entire underpayment. Section 6653(a)(2) provided for an addition to tax equal to 50 percent of the interest which is imposed under section 6601 on that portion of the underpayment which is due to negligence or intentional disregard of rules or regulations.

An "underpayment," as that term is used in section 6653, is equivalent to a "deficiency," as defined in section 6211(a) (section 6653(c)), except where the return is not timely filed.

Section 6211(a) defines a deficiency, in essence, as the correct amount of tax for the year in issue, decreased by any amount of tax shown by the taxpayer on his return if a return is filed plus amounts previously assessed or collected without assessment as a deficiency increased by any rebates. However, the tax shown on the taxpayer's return is not taken into account if the return is not filed within the date prescribed by law determined with regard to extensions. Sec. 6653(c)(1). We have previously determined that petitioners' requests for extensions were void and, therefore, their 1981 and 1982 returns were not filed within the date prescribed by law. Therefore, petitioners' "underpayment" is their entire correct tax liability for 1981 and 1982, unreduced by the amounts shown as tax on their returns. Sec. 6653(c)(1). Cf. *Breman v. Commissioner*, 66 T.C. 61, 71 (1976).

Negligence has been defined as a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. *Marcello v. Commissioner*, 380 F.2d 499 (5th Cir. 1967), affg. in part and revg. in part a Memorandum Opinion of this Court. Petitioners cite four principal reasons for their understatement of taxable income in 1981 and 1982. First, petitioners lost or misplaced many of the Forms 1099 which disclosed the true extent of interest and dividend income they received in 1981 and 1982. Second, information relating to Embry Operations was in the hands of Mrs. Crocker's father, Mr. Embry, and, therefore, petitioners did not have ready access to this information. Third, Mr. Crocker mistakenly excluded his reimbursements for expenses in connection with his "day work," from his gross income even though he deducted these expenses on his return. Finally, petitioners deducted the amounts contributed to Mr. Crocker's Keogh plan based on the advice of an insurance salesman who sold him the plan.

On the basis of the same facts from which we concluded that petitioners did not make bona fide attempts to estimate their tax liabilities and did not have reasonable cause for failing to file timely returns, we hold that petitioners were negligent in failing to properly report their tax liabilities. Under section 6653(a)(1), the 5-percent addi-

tion to tax is computed on the entire underpayment, if any part of the underpayment is due to negligence. *Commissioner v. Asphalt Products, Co.*, 482 U.S. 117 (1987). We therefore sustain respondent's determination of additions to tax under section 6653(a)(1) in full.

Section 6653(a)(2) provides for an addition to tax with respect to the portion of the underpayment which is due to negligence. It is clear that petitioners' negligence caused them to underreport their interest and dividend income. They failed to use due care in maintaining adequate records from which this income could be determined. This shows not only negligence, but also an intentional disregard of the rules and regulations which require a taxpayer to keep permanent records sufficient to establish the taxpayer's gross income, deductions, etc. Sec. 6001; sec. 1.6001-1, Income Tax Regs. Petitioners' only excuse, that Mr. Crocker was extremely busy, is simply not adequate to relieve them of their obligation to maintain records and correctly report income.

Petitioners were also negligent in failing to obtain the necessary financial information relating to Embry Operations from Mr. Embry. Petitioner's only excuse for not obtaining this information is that Mr. Embry lived approximately 50 miles from where they lived. Petitioners made no showing at trial that they even attempted to contact Mr. Embry in order to obtain the information relating to the family partnership. Mr. Crocker testified at trial that his wife had received income from Embry Operations for many years prior to 1981 and 1982. Reasonable and ordinarily prudent persons would have realized that this pattern might continue into 1981 and 1982, and would have attempted to secure the information necessary for the proper preparation of their income tax returns. We conclude that petitioners were negligent with respect to their omission of income from Embry Operations.

Petitioners understated the 1981 profit from Mr. Crocker's law practice by approximately $20,000 and the 1982 profit from Mr. Crocker's law practice by approximately $12,000. At trial, Mr. Crocker testified that these understatements resulted, in part, from his misapprehension of the tax forms he received from the oil companies for which

he had performed day work. He mistakenly assumed that he did not receive any reimbursement for expenses. Consequently, he took deductions on petitioners' returns for amounts paid by him in connection with his day work but did not include the reimbursements for expenses he received in the income petitioners reported.

Although not as crystal clear, on the basis of this record, we conclude that petitioners were negligent in deducting expenses without including in income the amounts they received as reimbursements for such expenses. We recognize that the inclusion of income and the deduction of expenses is often confusing to the average taxpayer. On the other hand, we are not here dealing with an average taxpayer. Mr. Crocker is a successful attorney who knew or should have understood his compensation arrangements. If we assume he was aware of the terms of his agreements with the oil companies, surely he would have realized that he was reimbursed for his expenses in connection with the work he did for these companies. Furthermore, if it was not clear whether he received reimbursement for his expenses, Mr. Crocker could easily have contacted the oil companies to get a more detailed accounting. Thus, petitioners failed to exercise due care in ascertaining the true amount of income generated by Mr. Crocker's "day work."

Finally, we conclude that petitioners were not negligent in deducting amounts contributed to Mr. Crocker's Keogh plan in 1981 and 1982. Mr. Crocker testified that he purchased the plan from an insurance salesman who was in the business of selling retirement plans. The salesman informed Mr. Crocker that he would be able to deduct contributions to the plan, even though none of his employees were beneficiaries of the plan, as long as he gave such employees the opportunity to participate and they declined. Mr. Crocker testified that he offered to include his secretary, who was his only full-time employee, but she declined the offer. He, therefore, felt justified in deducting amounts contributed to the plan in 1981 and 1982. Furthermore, Mr. Edwards, the accountant who prepared an amended 1980 return for petitioners in December 1982, after they received inquiries from the Internal Revenue Service, did not question the deductibility of the Keogh plan contributions in

1980. Since the amended 1980 return was prepared prior to the due date of petitioners' 1982 return, the treatment by the accountant of the Keogh plan contribution might have reinforced petitioners' belief that the contributions were deductible on their 1982 return. Under these circumstances, we conclude that petitioners were not negligent in deducting the Keogh plan contribution for each year in reliance on the advice of the salesman and the treatment of the item by their accountant. They did not intentionally disregard the rules and regulations in deducting the Keogh plan contributions.

Respondent did not determine the addition under section 6653(a)(2) with respect to interest accruing on the full amount of the underpayment, as defined previously but rather determined that only $23,044.73 of the underpayment in 1981 and $9,773.23 of the 1982 underpayment were due to negligence. Petitioner has shown no error in respondent's computation except with respect to respondent's not excluding the underpayment resulting from the disallowance of the Keogh contribution in each year. We sustain respondent's computation under section 6653(a)(2) except that we conclude the addition should not apply with respect to interest imposed on the portion of the underpayment attributable to petitioners' deduction of the Keogh plan contributions.

Petitioners' contend that, if we sustain the addition to tax under section 6651(a)(1), the additions to tax under section 6653(a)(1) and (2) are improper and effectively penalizes them twice for a single infraction. Petitioners' contention is without merit. We have uniformly upheld respondent's determinations of additions to tax under both section 6651(a)(1) and section 6653(a) where we have found both additions to be supported by the evidence with respect to the same year. *Robinson's Dairy, Inc. v. Commissioner*, 302 F.2d 42 (1962), affg. 35 T.C. 601 (1961); *Judge v. Commissioner*, 88 T.C. 1175, 1191 (1987). However, in this case, the two additions to tax are not being imposed on a single infraction. We have upheld the section 6651(a)(1) addition because of our conclusion that petitioners' 1981 and 1982 returns were not timely filed, and petitioners have not shown that their failure to file their 1981 and 1982

returns by the due date was due to reasonable cause and not willful neglect. We have upheld the additions to tax under section 6653(a)(1) and (2) because petitioners (quite apart from their failure to timely file their returns) negligently underreported their taxes in both 1981 and 1982 on the late filed returns.

*Decision will be entered under Rule 155.*