STEVEN J. AND CATHERINE M. CANNATA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cannata v. Commissioner
Docket No. 2749-89
United States Tax Court
T.C. Memo 1990-502; 1990 Tax Ct. Memo LEXIS 555; 60 T.C.M. (CCH) 839; T.C.M. (RIA) 90502; September 24, 1990, Filed *555 Decision will be entered under Rule 155. Steven J. and Catherine M. Cannata, pro se. Robert W. Towler, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' joint Federal income tax as follows: Additions to tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653(a)(2) Sec. 6661
1984
$  3,312
-0-
$   166
* -0-
1985
$ 25,550
$ 6,388
$ 3,719
**
$ 6,388 Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue. In an amendment to his answer, respondent increased the addition to tax under section 6651(a)(1) for 1985 by $ 12,208 pursuant to section 6214(a). The increase *557 results from respondent's initial miscalculation of the addition. Respondent concedes that petitioners are entitled to deduct $ 7,129 of the $ 17,497 they claimed as "other interest" on their 1984 return, and $ 9,990 of the $ 22,708 they claimed on their 1985 return. Moreover, the parties have agreed to be bound by Fink v. Commissioner, [1] docket No. 21099-86, once it becomes final in accordance with section 7481, on whether petitioners are entitled to deduct the excess "other interest" for taxable years 1984 and 1985. The decision in Fink has not been entered as of the filing date of this opinion. Respondent also concedes that petitioners are not liable for any addition to tax under section 6653(a)(1) and (a)(2) for taxable years 1984 *558 and 1985, and section 6661 for taxable year 1985. Moreover, he concedes that they are entitled to use income averaging in taxable year 1985. After concessions, the issues for decision are (1) whether petitioners are liable for the addition to tax under section 6651(a)(1) for 1985, and (2) if so, whether the tax reported on their return filed on October 14, 1986, reduces the amount on which the addition to tax is calculated. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of fact and accompanying exhibits are incorporated herein. Petitioners resided in San Francisco, Calif., at the time they filed their petition in this case. Unless otherwise indicated, all references to petitioner refer to Steven J. Cannata. Petitioner is an attorney whose practice focuses on antitrust matters. Petitioner neither gives tax advice, nor does he hold himself out as a tax specialist. Moreover, he took only one tax course in law school. Petitioner Catherine M. Cannata is a homemaker, and has taught elementary school. Petitioners had little knowledge or understanding of the tax laws, and therefore hired Dennis DiRicco (Mr. DiRicco) to advise *559 them on all their tax matters, and to prepare their individual tax returns. At all relevant times, Mr. DiRicco was an attorney who specialized in tax law. Mr. DiRicco required all his clients to maintain their tax information by placing all potential tax items in folders labeled by categories, such as interest, business vs. personal deductions, and income. Petitioners always complied with this tax information filing system. In February of the subsequent tax year, Mr. DiRicco's office would set up appointments for his tax clients, or instruct them to send all their tax information to the office by March 15. Petitioners always sent their tax information to Mr. DiRicco's office by the end of March. Mr. DiRicco prepared petitioners' tax returns for taxable years 1977 through 1988. Additionally, he prepared any extensions, personally determined whether petitioners needed to pay any estimated tax with the extensions, and advised petitioners accordingly. Mr. DiRicco knew that petitioners relied on and followed his advice on all their tax matters. Between 1980 and 1984 petitioner was one of the attorneys involved in an antitrust litigation suit conducted in Stockton, Calif. However, *560 due to a fee dispute with another attorney, petitioner did not receive his portion of the contingent fee, $ 195,825.90, until 1985. In January or February of 1986 petitioner received a Form 1099-MISC (1099-MISC) reflecting the $ 195,825.90 payment. Petitioner placed the 1099-MISC in the appropriate tax folder. In March 1986 petitioner forwarded the folder containing the 1099s, including the 1099-MISC, along with all the other folders containing their tax information, to Mr. DiRicco's office. Mr. DiRicco's office received petitioners' tax information before April 5, 1986. In or around June 1, 1985, petitioner and two other individuals, Lawrence Papale (Mr. Papale) and Judy Genovese, formed a law partnership named Cannata Genovese & Papale. The partnership's information return for 1985 was to be prepared by Mr. Papale's accountant, rather than by Mr. DiRicco. Sometime before April 15, 1986, Mr. DiRicco spoke with Mr. Papale and was informed that the partnership would have substantial write-offs and investment tax credits. He also learned that petitioner's Form 1065, Schedule K-1, for 1985 would not be available until after April 15, 1986. Accordingly, Mr. DiRicco planned to *561 file a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, on behalf of petitioners for their 1985 taxable year. To determine whether petitioners would have to pay any taxes with the extension, Mr. DiRicco had his personal secretary remove and read aloud the tax information contained in petitioners' folders, as he wrote down the numbers. Then he added and subtracted the figures to determine taxable income and self-employment income. Somehow, however, Mr. DiRicco missed the 1099-MISC, i.e., $ 195,825.90, when he calculated petitioners' 1985 estimated tax liability. Although Mr. DiRicco knew in April 1986 that the antitrust case had been settled, he was not personally aware that petitioner's contingent fee dispute had been settled, or that petitioner had actually received any of the contingent fees in 1985. Furthermore, Mr. DiRicco personally did not look in petitioners' tax folders before he filed the automatic extension. Thus he was not aware that the Form 1099-MISC was missing from his calculation. Taking into account Mr. Papale's estimated tax picture of the partnership, Mr. DiRicco determined petitioners' 1985 estimated tax liability *562 was zero. Sometime before the automatic extension was filed, petitioner called Mr. DiRicco's office to inquire what amount of tax had to be paid with the extension. Mr. DiRicco's secretary told petitioner that no tax was due. Petitioner questioned that, but after the secretary verified that information with Mr. DiRicco, she again informed petitioner that there was no taxable income, and that if there was it would be a nominal self-employment tax, and maybe a couple of dollars of penalties. Petitioner, knowing that Mr. Di Ricco had spoken with Mr. Papale regarding the partnership tax situation, accepted Mr. DiRicco's determination that he did not have to pay any tax with the extension. Petitioner was not aware that Mr. DiRicco had not considered the $ 195,825.90 in estimating the tax liability. On or about April 5, 1986, Mr. DiRicco filed the automatic extension reporting the "zero" estimated tax liability, but in accordance with standard office procedure, he did not provide petitioners with a copy of the extension. On August 15, 1986, Mr. DiRicco filed on behalf of petitioners, a Form 2688, Application for Extension of Time to File U.S. Individual Income Tax Return, until *563 October 15, 1986. The second extension was approved by the Director of the Fresno Service Center. In late September 1986 Mr. DiRicco began preparing petitioners' 1985 tax return even though he had not received the K-1 from petitioner's law partnership. As he was thumbing through the folders he came across the 1099-MISC which he had never seen before. He contacted petitioner immediately and asked him what the money represented. Petitioner informed him it was his portion of the contingent fee from the 1984 settlement of the antitrust case. On or around October 1, 1986, petitioner sent Mr. DiRicco's law office his K-1 law partnership form. The K-1 reported income of $ 7,500 and no more than $ 1,824 of investment tax credits from the partnership. In early October 1986 petitioners were outside of the United States. Therefore, Mr. DiRicco prepared and signed petitioners' joint individual Federal income tax return for calendar year ending December 31, 1985, as preparer and on behalf of petitioners under a power of attorney. On October 14, 1986, he filed the return with the Internal Revenue Service Center at Fresno, Calif. The return reported a tax due of $ 48,838. Petitioners *564 did not, however, pay the tax until March 25, 1987. Accordingly, respondent assessed a $ 3,418.31 addition to tax for failure to pay, which petitioners paid on March 25, 1987. The addition for failure to pay is not in issue. OPINION The first issue for decision is whether petitioners failed to timely file their 1985 tax return without reasonable cause. See sec. 6651(a)(1).[2] The resolution of this issue turns on whether petitioners "properly estimated" their tax liability on the automatic extension. See sec. 1.6081-4(a)(4), Income Tax Regs.If they failed to "properly estimate" their tax liability, then the automatic extension (and the second extension) is invalid, and their return was untimely. Crocker v. Commissioner, 92 T.C. 899 (1989). *565 Pursuant to the authority granted in section 6081(a), the Secretary promulgated section 1.6081-4, Income Tax Regs., which provides that an automatic four-month extension shall be granted if the taxpayer (1) files a signed Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return," sec. 1.6081-4(a)(2), Income Tax Regs.; (2) files the application with the appropriate internal revenue officer on or before the due date prescribed for filing the taxpayer's return, sec. 1.6081-4(a)(3), Income Tax Regs.; and (3) shows the full amount properly estimated as tax for such taxpayer for such taxable year, and fully remits with the application the amount of tax properly estimated which is unpaid as of the date prescribed for the filing of the return, sec. 1.6081-4(a)(4), Income Tax Regs.
Respondent, relying on our decision in Crocker v. Commissioner, supra, contends that the application for automatic extension was invalid and the *566 extension received thereon was void ab initio, because petitioners failed to properly estimate their tax liability. In Crocker v. Commissioner, 92 T.C. at 908, we stated: In our view, a taxpayer should be treated as having "properly estimated" his tax liability, within the meaning of section 1.6081-4(a)(4), Income Tax Regs., when he makes a bona fide and reasonable estimate of his tax liability based on the information available to him at the time he makes his request for extension. [Citation omitted]. This requires the taxpayer to judge or determine his tax liability generally, but carefully. * * * Based on the foregoing, we find that Mr. DiRicco made a bona fide and reasonable attempt to estimate petitioners' tax liability, based on petitioners' records, even though the Form 1099-MISC was inadvertently overlooked. Accordingly, we conclude that under the particular circumstances of this case petitioners' automatic and the second extensions are valid. Thus, they are not liable for the addition to tax under section 6651(a)(1). *567 To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on the entire underpayment.↩
**. 50 percent of the interest due on the entire underpayment.↩
1. Fink v. Commissioner, docket No. 21099-86, was consolidated with the case of Alexander v. Commissioner, docket No. 15015-86, as well as others. Our opinion in Alexander v. Commissioner, T.C. Memo. 1990-141↩, was filed on March 19, 1990.
2. Sec. 6651 provides as follows: (a) Addition to the Tax. -- In the case of failure -- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;↩