T.C. Memo. 1999-147

UNITED STATES TAX COURT

WILBUR KENNETH GRIESMER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15785-98.              Filed April 30, 1999.

Wilbur Kenneth Griesmer, pro se.

<u>Anita A. Gill</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable years in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1995 and 1996 in the amounts of $3,484 and $3,311, respectively, and accuracy-related penalties under section 6662(a) in the amounts of $697 and $662, respectively.

After a concession by petitioner,[2] the issues remaining for decision are as follows:

(1)  Whether petitioner engaged in his meteorite and pyrite collection activity for profit during 1995 and 1996.  We hold that he did not.

(2)  Whether petitioner's net capital loss for 1995 should be limited to $282, as opposed to $2,864 as claimed on petitioner's Schedule D for that year.  We hold that it should.

(3)  Whether petitioner is liable for accuracy-related penalties under section 6662(a) for 1995 and 1996.  We hold that he is.

Adjustments relating to the taxable amount of petitioner's Social Security benefits for the years in issue are purely mechanical matters, the resolution of which is dependent on our disposition of the disputed issues.

---

[2]  Petitioner concedes that he received Social Security benefits for the taxable year 1996 in the amount of $12,402.

FINDINGS OF FACT[3]

Petitioner resided in Cleveland, Ohio, at the time that his petition was filed with the Court.

After graduating from high school, petitioner worked for 2 years as a seaman on various oreboats owned and operated by the Great Lakes Fleet of U.S. Steel Corporation. Petitioner spent the balance of his working life at a factory job for Warner Swasey Co. He retired in 1985.

After retiring, petitioner commenced an activity involving the collection of various rocks and minerals. In particular, petitioner combed the beaches of Lake Erie searching for what he considered to be meteorites, and in particular Martian meteorites, which he believed were quite valuable.[4] He would then clean what he collected and, on occasion, paint it gold. He would not offer the specimen for sale, but rather added it to his collection.

---

[3] The parties did not enter into a stipulation of facts as required by the Court's Standing Pre-Trial Order and Rule 91.

[4] Petitioner explained the presence of Martian meteorites on the shore of Lake Erie as follows:

> Now, as the big meteors or comets land on Mars, they splash this brown and black stuff up in the air, and with the light gravity on Mars, it takes off into space. Now, it floats around in space. Now, it's drawn by the gravity of the sun towards our direction.

Petitioner also collected various pyrites, which he regarded as precious metals.[5] According to petitioner, "I purchase maybe tons and tons of this stuff * * * from Europe, Greenland, South America". Petitioner has not made any attempt to sell his pyrites, but rather regards his collection as his legacy to certain individuals.[6]

Petitioner did not maintain any records for his meteorite and pyrite collection activity.

Petitioner filed Federal income tax returns (Forms 1040) for 1995 and 1996, disclosing his occupation as "self-employed physicist". Petitioner attached to each of his returns a Schedule C (Profit or Loss From Business) in the name of "The

---

[5] "Pyrites", according to Webster's Unabridged Third New International Dictionary, at 1853 (1993), are "any of various metallic-looking sulfides of which pyrite is the commonest", whereas "pyrite" is "a common mineral that consists of iron disulfide $FeS_2$ * * * and is burned in making sulfur dioxide and sulfuric acid".

[6] The following colloquy at trial reveals petitioner's intent:

THE COURT: * * * What is your hope for this material?

PETITIONER: Well, I got maybe grandchildren or possible grandchildren that live next door to me. They're possible grandchildren; I'm not sure. I want them to be able to enjoy life as well as I enjoy life.

T.O.E. Co."[7]  Petitioner reported gross income and claimed

expenses and net losses on his Schedules C as follows:

|                        | 1995   | 1996   |
|------------------------|--------|--------|
| Gross income           | $1,383 | $209   |
| Less: expenses         |        |        |
| Office expense         | 305    | ---    |
| Supplies               | 56     | 2,106  |
| Salvage from salvagers | 83,994 | 64,035 |
| Net loss               | 82,972 | 65,932 |

Petitioner did not derive any gross income from the sale of

meteorites or pyrite in 1995 or 1996.  Rather, the gross income

that he reported on his Schedules C represented interest from

bank accounts that may have been maintained in the name of The

T.O.E. Co.

Petitioner also attached to his income tax return for 1995 a

Schedule D (Capital Gains and Losses).  On his Schedule D,

petitioner claimed a net capital loss in the amount of $2,864.

Petitioner used the net losses claimed on his Schedules C

for 1995 and 1996, as well as the net capital loss claimed on his

Schedule D for 1995, to completely offset his reported income

from other sources, such as interest, dividends, and pension and

IRA distributions.  Thus, petitioner reported adjusted gross

income for 1995 and 1996 in the amounts of negative $52,949 and

---

[7]  "T.O.E." is short for "Treasures on Earth".

negative $40,112, respectively, and accordingly did not report any income tax liability for those years.

In the notice of deficiency, respondent determined that petitioner did not engage in his meteorite and pyrite collection activity for profit within the meaning of section 183. (Alternatively, respondent determined that petitioner failed to substantiate the expenses claimed.)   Respondent also recharacterized the gross income reported on petitioner's Schedules C as interest income properly reportable on Schedules B and line 8a of Forms 1040.

### OPINION

Respondent contends that petitioner is not entitled to the claimed Schedule C losses because petitioner's meteorite and pyrite collection activity was not engaged in for profit.  In the alternative, respondent contends that petitioner failed to substantiate the claimed losses.

Under section 183(a), if an activity is not engaged in for profit, then no deduction attributable to that activity is allowable except to the extent provided by section 183(b).  In pertinent part, section 183(b) allows deductions to the extent of gross income derived from such activity.[8]

---

[8]  As previously stated, petitioner did not derive any gross income from the sale of meteorites or pyrite in 1995 or 1996; rather, the gross income that he reported on his Schedules C

(continued...)

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions are allowable under section 162 or under section 212(1) or (2) only if the taxpayer is engaged in the activity with the "actual and honest objective of making a profit." See Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

The existence of the requisite profit objective is a question of fact that must be decided on the basis of the entire record. See Benz v. Commissioner, 63 T.C. 375, 382 (1974).

The regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in

---

[8](...continued)
represented interest from bank accounts that may have been maintained in the name of The T.O.E. Co. Accordingly, petitioner did not derive any gross income from his meteorite and pyrite collection activity because there was no "organizational and economic interrelationship" between that activity and the production of interest from bank accounts. See sec. 1.183-1(d)(1), Income Tax Regs. In other words, petitioner's meteorite and pyrite collection activity and the production of interest from bank accounts were not facets of the same "activity". Therefore, if petitioner's activity were not engaged in for profit, sec. 183(b) would not serve to allow any deductions.

carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. See sec. 1.183-2(b), Income Tax Regs.

In the present case, none of the factors indicates that petitioner carried on his meteorite and pyrite collection activity with the requisite profit objective. The ultimate goal of an activity engaged in for profit must be to realize a net profit from the activity so as to recoup losses sustained in prior years. See Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). In this regard, petitioner did not have a single dollar of gross receipts from this activity, nor did he even offer any part of his collection for sale. See sec. 1.183-2(b)(6) and (7), Income Tax Regs. This factor indicates the lack of a profit objective.

Further, petitioner did not carry on his meteorite and pyrite collection activity in a businesslike manner. He did not maintain any books or records of his income and expenses. See sec. 1.183-2(b)(1), Income Tax Regs. Petitioner also does not have any special skill or expertise with regard to meteorites or

pyrite.  See sec. 1.183-2(b)(2), Income Tax Regs.  In addition, petitioner generated significant tax benefits by offsetting losses from his meteorite and pyrite collection activity against his income from interest, dividends, and other sources and thereby reported no Federal income tax liability.  See sec. 1.183-2(b)(8), Income Tax Regs.  All of these factors favor respondent's position that petitioner's activity was not engaged in with the requisite profit objective.

In addition to concluding that petitioner engaged in his meteorite and pyrite collection activity without the requisite profit objective, we agree with respondent that petitioner failed to substantiate the expenses claimed on his Schedules C. Taxpayers are required to prove their entitlement to any deduction claimed, including the fact of payment.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Petitioner would have us believe that he paid $83,994 in 1995 and $64,035 in 1996 as "salvage from salvagers".[9]  However, petitioner's testimony was bizarre if not

---

[9] In testimony before the Court in his case involving the taxable years 1992, 1993, and 1994, petitioner described the "salvagers" as junior high school students who sold minerals to him after he had disclosed the minerals' location to the students.

fanciful, completely unsupported by any documentary evidence, and not otherwise corroborated.  In addition, the record includes indications contrary to petitioner's assertions.  For example, we are not convinced that petitioner had the financial resources to incur expenses of the magnitude claimed on his Schedules C.

In view of the foregoing, we sustain respondent's determination on this issue.

Next, we consider whether petitioner's net capital loss should be limited to $282 as opposed to $2,864, as claimed on his 1995 Federal income tax return.  Respondent contends that the discrepancy is due to a math error made by petitioner, changes in petitioner's cost basis, and the omission of certain transactions.  Petitioner failed to produce any evidence, including testimony, regarding this matter.  In light of petitioner's complete failure of proof, we sustain respondent's determination on this issue.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, supra; Welch v. Helvering, supra.

Finally, we consider whether petitioner is liable for the accuracy-related penalty under section 6662(a) for 1995 and 1996.

Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, then there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment that is so attributable.  The term "negligence" includes any failure

to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Petitioner bears the burden of proving that the negligence penalty is inapplicable. See Rule 142(a); INDOPCO, Inc. v. Commissioner, supra; Welch v. Helvering, supra; cf. Girsis v. Commissioner, T.C. Memo. 1992-244.

At trial, petitioner did not offer any evidence to suggest that he was not negligent, nor did he argue that he should not be held liable for the penalty. Cf. Girsis v. Commissioner, supra. In any event, petitioner did not maintain any books or records regarding the matters in issue. The negligence penalty may be justified if the taxpayer fails to keep adequate records. See Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir. 1978), affg. T.C. Memo. 1975-293; Crocker v. Commissioner, 92 T.C. 899, 916 (1989). Further, failure to maintain adequate records indicates disregard of the rules and regulations requiring taxpayers to maintain permanent records sufficient to establish their gross income and deductions. See Crocker v. Commissioner, supra at 917. We therefore sustain respondent's determination on this issue.

To reflect our disposition of the disputed issues, as well as petitioner's concession,

Decision will be entered

for respondent.