T.C. Memo. 1998-417

UNITED STATES TAX COURT

WILLIAM O. HARRISON, JR. AND
CATHY L. HARRISON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24616-95.          Filed November 18, 1998.

<u>Robert G. Wheeler</u>, for petitioners.

<u>Franklin R. Hise</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, <u>Judge</u>:  Respondent determined the following deficiencies in and additions to petitioners' Federal income tax:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|------|-----------|------------------------------|
| 1988 | $136,933 | $34,233 |

| 1989 | 179,964 | 44,991 |
| 1990 | 14,324 | 3,581 |

Unless stated otherwise, all section references are to the Internal Revenue Code as in effect for the years in issue. After concessions, the issue for decision is whether petitioners are liable for additions to tax under section 6651(a)(1) for failure to file timely income tax returns for 1988 and 1989.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife who filed joint individual income tax returns for 1988, 1989, and 1990. At the time the petition was filed in this case, petitioners resided in Corpus Christi, Texas. In this opinion, references to petitioner are to Mr. William O. Harrison, Jr.

Petitioner received a bachelor's degree in 1967 from Texas Christian University where he majored in history. He received a law degree in 1970 from the University of Texas Law School where, among other courses, he took a tax course and a required course in legal accounting. After graduating from law school, petitioner was employed from 1971 through 1975 by a law firm in Corpus Christi, Texas.

He then practiced law for several years as a sole practitioner before he formed a law firm in Corpus Christi in 1979. He worked at that firm until it dissolved in 1983. Petitioner served as an elected representative in the Texas House of Representatives from 1979 through 1980, and again from 1983 through 1984.

In 1984, petitioner moved to Houston where he joined Perdue, Brandon, Blair & Fielder. At that law firm, he devoted great effort to obtaining contracts with State and local governments for the collection of delinquent tax accounts. Several months after petitioner's arrival, the firm dissolved.

In 1985, petitioner participated in the formation of Blair, Williams & Harrison. At the end of the year, that firm combined with another firm to form Heard, Goggan, Blair, Williams & Harrison (hereinafter referred to as the Houston firm). Petitioner held a one-ninth interest in the Houston firm. Petitioner was successful on behalf of the firm in obtaining a number of lucrative contracts with municipal governments for the collection of delinquent tax accounts.

In 1987, petitioner became concerned about the manner in which the firm was being managed. He withdrew from the firm in December 1987, and commenced negotiations with the

firm to value his interest therein, including the government contracts that he had originated. In April 1988, petitioner filed suit against the firm. On October 25, 1988, petitioner and the firm resolved their dispute. Under the settlement, the firm agreed to pay petitioner 3 percent of the gross income realized by the firm during the years 1989 through 1992. The firm also paid petitioner $500,000 in October 1988.

After petitioner withdrew from the Houston firm, he returned to Corpus Christi to engage in the practice of law as a sole practitioner. During 1989, petitioner made expenditures of approximately $300,000 with respect to his law practice in Corpus Christi, of which approximately $80,000 were for furniture and leasehold improvements.

## Other Businesses

From 1984 through 1988, petitioner held an investment in a cattle feeding business in Oklahoma that was operated by Mr. Sam Gilmore. The business earned income or incurred loss from the purchase and sale of cattle. Petitioner was not directly involved in managing the business. He relied on Mr. Gilmore to decide which cattle to purchase, how much to feed them, and when to sell them. Mr. Gilmore operated the business through a bank line of credit. Petitioner

had met Mr. Gilmore through a partner at the Houston firm, Mr. Les Williams.

The record does not document the amount of income or loss petitioner realized during the years 1984 through 1986 from his investment in the cattle feeding business. The Schedule F filed with petitioners' 1987 return reports net farm profit of $11,595 from the cattle feeding business.

During the period 1986 through 1989, petitioner was involved in a number of other businesses. In 1977, he started Cooper's Alley, a restaurant and bar. Cooper's Alley operated restaurants in Corpus Christi, Texas, and in Port Arkansas, Arkansas. It incurred losses and ceased business in July 1986. In 1983, petitioner and Mr. Hank Parkinson started Compuprint, Inc. and Parkinson Associates. Those entities ceased business in 1989 when Mr. Parkinson died. Petitioner was also engaged in another restaurant, Lighthouse Restaurant, in Corpus Christi, a real estate business called T-Head Marina which owned the real estate for the restaurant, and a partnership, Bayview I. Finally, throughout the period in issue, petitioner owned a one-third interest in a family partnership, Harrison, Harrison & Harrison. That partnership owned a furniture store, a funeral home, an automobile dealership, and it engaged in ranching.

Petitioner's Books and Records

Ms. Lynn Cates was petitioner's bookkeeper from 1983 through the years in issue. She worked in an office that petitioner maintained during the years in issue in Corpus Christi. Ms. Cates used a journal bookkeeping system referred to as the "One Write System" to record petitioner's cash disbursements and deposits. All of the checks in petitioner's checkbook were made with a carbon backing so that anything written on a check was automatically copied into a journal. Ms. Cates reconciled the entries in the journal with petitioner's bank account each month. In 1989, she established a general ledger system which she used in addition to the "One Write System".

Ms. Cates had no bookkeeping experience when she started working for petitioner in 1983. She received some initial training from petitioner's previous bookkeeper and some additional training from Ms. Elizabeth Ruble, a certified public accountant, who was involved in the preparation of petitioners' 1988, 1989, and 1990 returns, as further described below. Ms. Cates took a basic accounting class and a computer accounting class in 1985.

Petitioners' Accountants

Since 1971 when petitioner graduated from law school, he has retained certified public accountants to prepare his individual income tax returns.  From 1977 through the years at issue, petitioners have retained Mr. Gary Whittington, a certified public accountant, to prepare their individual income tax returns and the returns of some of the businesses with which petitioner was involved. Petitioners' personal returns for 1978 through the years in issue were prepared by Mr. Whittington and Ms. Elizabeth Ruble, whom Mr. Whittington employed.  As mentioned above, Ms. Ruble is a certified public accountant who began working closely with Ms. Cates soon after Ms. Cates was employed by petitioner.

The preparation of each of petitioners' individual returns followed a similar pattern.  Typically, Ms. Ruble would contact Ms. Cates in March or early April to determine whether petitioners had sufficient information to file a return for the prior calendar year by April 15th, or whether it would be necessary to file application for an extension of the filing deadline.  If, as was often the case, an extension was necessary, Ms. Ruble would work with Ms. Cates to estimate petitioners' tax liability for the

year.  Typically, they would discuss by telephone the changes to the taxable income reported on petitioners' last tax return that were necessary to estimate petitioners' taxable income for the calendar year under review.  During these discussions, Ms. Ruble would review petitioners' last tax return, and Ms. Cates would review petitioners' books and records, and other tax information.  Ms. Ruble would make an adding machine tape that showed the additions to and subtractions from the taxable income reported on petitioners' last tax return.  The total on the tape was petitioners' estimated taxable income for the calendar year under review.

During the years in issue, Mr. Whittington's office had a policy concerning the manner in which Forms 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return, were to be completed if a client had no taxable income for the year.  In that event, the accountants in Mr. Whittington's office would enter the amount of any income tax withheld, plus any estimated tax payments, on the Form 4868 on the line provided for the taxpayer's total tax liability, and they would show a balance due of zero, rather than a negative amount.

Petitioners' Joint Return for 1987

Petitioners filed a joint Federal income tax return for 1987 on Form 1040.  They paid $119,585 with the return, consisting of $117,799 in tax, and a penalty of $1,786 for underpayment of estimated tax.  On the Schedule E, Supplemental Income Schedule, filed with the return, petitioners reported receiving $445,375 in nonpassive income from the Houston firm.  On the Schedule F, Farm Income and Expenses, filed with the return, petitioners reported a net farm profit of $11,595 from the cattle feeding operation.

Petitioners' Joint Return for 1988

In April 1989, Mr. Whittington and Ms. Ruble prepared and filed, on petitioners' behalf, a Form 4868, requesting an automatic extension of time to file petitioners' 1988 return.  The Form 4868 states that petitioners' total income tax liability for 1988 is $1,408, that they had Federal income tax withheld for the year of $1,408, and that they had a balance due of zero.  The Form W-2, Wage and Tax Statement, for petitioner's wife reports $1,408 in Federal income tax withheld.  Petitioners' accountants estimated that petitioners would incur a loss for 1988,

and, pursuant to their office policy, they entered the amount of income tax withheld from Mrs. Harrison's salary as petitioners' total tax liability for 1988.

In estimating petitioners' income for 1988, petitioners' accountants took into account Mr. Harrison's share of partnership income from the Houston firm. Petitioner, Ms. Cates, and Ms. Ruble all attempted to contact Mr. Greg Dewinney, the C.P.A. for the Houston firm, prior to April 15, 1989, in order to obtain information about Mr. Harrison's income from the firm for 1988, but they were unsuccessful.

Petitioners' accountants knew that Mr. Harrison had finally withdrawn from the firm in early April 1988 and that he had reported income from the firm for the prior year of approximately $400,000. Accordingly, they estimated that he would realize approximately $100,000 from the firm for the first 3 months of 1988 before his withdrawal from the firm (i.e., $400,000 x 3/12ths).

Subsequently, petitioners received a Schedule K-1, Partner's Share Of Income, Credits, Deductions, Etc., from the Houston firm in a letter from the firm dated August 15, 1989. The Schedule K-1 reports that Mr. Harrison's income from the firm for 1988 is $261,309. Petitioners and their

accountants were surprised that the income was so high, approximately $160,000 more than the accountants had estimated.

In estimating petitioners' taxable income for 1988, petitioners' accountants also took into account the income from Mr. Harrison's interest in the cattle feeding business, described above. Petitioner, Ms. Cates, and Ms. Ruble all attempted to contact Mr. Gilmore prior to April 15, 1989, in order to obtain information about Mr. Harrison's income from the cattle feeding business for 1988, but they were unsuccessful.

Petitioners' accountants estimated that Mr. Harrison had realized a loss from this business for 1988. This was based upon the fact that losses had been realized in prior years and upon a letter written by Mr. Gilmore to Mr. Harrison in August 1988. In that letter, Mr. Gilmore stated that the operations of the business during fall of 1987 and spring of 1988 had not gone well and that Mr. Harrison's letter of credit had been exhausted and he needed to pay approximately $64,600 to replenish the letter of credit. Based upon that letter, petitioners and their accountants believed that the operating results for 1988 would show a loss.

In July or August 1989, petitioners received a statement referred to as the "W.O. Harrison Income Statement Cash Basis 1988" that reports the following income and expenses from the cattle feeding business for 1988:

Income:
  Sale of cattle                                        $1,880,166.94
  Cost of cattle sold                                    1,123,070.95

                                                           757,095.99
Expenses:
  Interest
    Leadership Banks            $52,360.77
    Ralph Grounds                9,500.00
  Futures loss                   4,584.38
  Feed expense                 402,862.12

    Total expenses                                        469,307.27

1988 Taxable income                                       287,788.72

Petitioners and their accountants were surprised by the amount of income shown on this statement. Petitioner's participation in this business came to an end at the close of 1988.

In August 1989, petitioners' accountants filed, on their behalf, Form 2688, Application for Additional Extension of Time To File U.S. Individual Income Tax Return, requesting an additional extension of time to file petitioners' 1988 return. The Form 2688 gives the

following reason why the extension was needed: "[t]he taxpayer's C.P.A. has currently been experiencing an extremely heavy workload. Although additional staff have been employed, they have been unable to complete all returns."

On or about October 17, 1989, petitioners filed their joint individual income tax return for 1988 on Form 1040, U.S. Individual Income Tax Return. They paid $101,093 with the return. This amount consists of total tax of $96,418, less Federal income tax withheld of $1,408, plus a penalty for underpayment of estimated tax reported on Form 2210, Underpayment of Estimated Tax by Individuals and Fiduciaries, in the amount of $6,083.

On the Schedule E, Supplemental Income Schedule, filed with their return, petitioners reported net income from the Houston firm in the amount of $120,374, consisting of the income reported on the Schedule K-1 sent by the firm to Mr. Harrison, $261,309, less aggregate expenses of $140,935. On the Schedule F, Farm Income and Expenses, filed with their return, petitioners reported net farm profit of $287,789 from the cattle feeding business.

Petitioners' 1988 return included a Form 6252, Installment Sale Income, and a Form 8308, Report of a Sale

or Exchange of Certain Partnership Interests. These forms state that a sale of Mr. Harrison's partnership interest in the Houston firm took place on October 25, 1988, for an "estimated" selling price of $3,740,000. Form 6252 also reports a cost or other basis in the partnership interest of $195,351. Petitioners did not report the $500,000 payment that Mr. Harrison received in 1988 from the partnership. They treated this payment as a loan, rather than as income.

Petitioners' Joint Return for 1989

In April 1990, Mr. Whittington and Ms. Ruble prepared and filed, on petitioners' behalf, a Form 4868 requesting an automatic extension of time to file petitioners' 1989 return. The Form 4868 states that petitioners' total income tax liability for 1989 is $2,200, that they had Federal income tax withheld for the year of $2,200, and they had a balance due of zero. The Form W-2, Wage and Tax Statement, issued to petitioner's wife for 1989 by her employer reports $2,374 in Federal income tax withheld, and respondent's records show a payment in the same amount. The record of this case does not explain why $2,200, rather than $2,374, was entered on Form 4868.

In computing petitioners' estimated tax liability for 1989, petitioners' accountants, Mr. Whittington and Ms. Ruble, followed the practice that they had established in prior years. Ms. Ruble contacted Ms. Cates in March or early April 1990, and they discussed the changes to petitioners' taxable income for 1988 that were necessary to estimate petitioners' taxable income for 1989. During this discussion, Ms. Ruble reviewed petitioners' 1988 return and Ms. Cates reviewed petitioners' books, records, and other tax information. They identified a number of changes that were necessary in estimating petitioners' 1989 taxable income. These included subtracting the profit reported for 1988 from the cattle feeding business to reflect the fact that Mr. Harrison had disposed of his investment in the business during 1988, subtracting the income reported from the Houston firm to reflect Mr. Harrison's withdrawal from the firm in 1988, adding payments attributable to the sale of Mr. Harrison's interest in the Houston firm, as offset by a carryover of capital losses from the termination of Cooper's Alley Restaurant, and subtracting the expenses incurred by Mr. Harrison in connection with his law firm in Corpus Christi.

In discussing the last item by telephone, Ms. Cates told Ms. Ruble that the total expenditures for Mr. Harrison's Corpus Christi law firm, as reflected in her journal, amounted to approximately $300,000. Ms. Ruble used this amount in computing petitioners' 1989 estimated tax liability. She did not discuss with Ms. Cates the composition of the amounts in that total, and she failed to take into account the fact that a substantial portion of that total consisted of capital expenditures, including $64,000 for leasehold improvements, $6,982 for reception room furniture, and $8,000 for office furniture, that were not fully deductible in 1989.

In August 1990, petitioners' accountants filed, on their behalf, a Form 2688, Application for Additional Extension of Time To File U.S. Individual Income Tax Return, requesting an additional extension of time to file petitioners' 1989 return. The Form 2688 states that the extension is needed because petitioners' accountant has an extremely heavy workload and has been unable to complete the return.

On or about October 16, 1990, petitioners filed a joint individual income tax return for 1989 on Form 1040. They paid $41,915 with the return. This amount consists

of a total tax of $38,702, less Federal income tax withheld of $2,374, plus a penalty for the underpayment of estimated tax of $2,438, and a penalty and interest for late payment in the aggregate amount of $3,149.

On the Schedule C, Profit or Loss From Business, filed with their return, petitioners reported a net loss of $208,542 from Mr. Harrison's law practice in Corpus Christi. They reported gross income of $28 and total expenses of $208,570 from this business, including depreciation of $3,319. Included among the assets on which depreciation is claimed are expenditures during 1989 for furniture in the aggregate amount of $17,982 and leasehold improvements of $64,199. On a Form 6252, Installment Sale Income, filed with their return, petitioners reported that they had received $552,218 from the sale of Mr. Harrison's interest in the Houston firm, of which 94.77 percent or $523,337 was long-term capital gain from an installment sale.

## Petitioners' Joint Return for 1990

In April 1991, petitioners' accountant filed, on their behalf, a Form 4868, requesting an automatic extension of time to file petitioners' 1990 return. The Form 4868

states that petitioners' total income tax liability for 1990 is $2,560, that they had Federal income tax withheld for the year of $2,560, that they had a balance due of zero. The Form W-2, Wage and Tax Statement, for petitioner's wife for 1990 lists $2,560 in Federal income tax withheld.

In August 1991, petitioners' accountants filed, on their behalf, a Form 2688 requesting an additional extension of time to file petitioners' 1990 return. The Form 2688 states that petitioners' accountant was overworked and was unable to complete petitioners' return.

On or about October 18, 1991, petitioners filed a joint individual income tax return for 1990 on Form 1040. They paid $124,186 with the return. This amount consists of total tax of $124,103, less the Federal income tax withheld of $2,560, plus a penalty for underpayment of estimated tax of $2,643.

On the Schedule C, Profit or Loss From Business, filed with the return, petitioners reported gross income of $50,331, total expenses of $61,267, and a loss of $10,936 from Mr. Harrison's law practice in Corpus Christi. Petitioners also reported on Schedule E, Supplemental Income and Loss, a loss of $113,338 from W.O. Harrison,

P.C., an S corporation.  On Form 6252, Installment Sale
Income, petitioners reported that they had received
$617,482 from the sale of Mr. Harrison's interest in the
Houston firm, of which 94.77 percent or $585,188 was long-
term capital gain from an installment sale.

The following schedule deals with petitioners' returns
for the years 1986 through 1992.  It shows the filing date
of each return, the total tax shown on each return, the
amount of tax, interest, and penalty paid with each return,
and the amount of tax paid on or before April 15th of the
following year:

| Year | Return Filed | Total Tax Per Return | Amount Paid With Return | Amount Paid Prior to 4/15 |
|------|------|------|------|------|
| 1986 | 10/16/87 | $26,449 | $26,801 | $118 |
| 1987 | 10/15/88 | 117,799 | 119,585 | -0- |
| 1988 | 10/17/89 | 96,418 | 101,093 | 1,408 |
| 1989 | 10/16/90 | 38,702 | 41,915 | 2,374 |
| 1990 | 10/18/91 | 124,103 | 124,186 | 2,560 |
| 1991 | 10/19/92 | 113,316 | 107,966 | 5,350 |
| 1992 | 10/18/93 | 79,675 | -0- | -0- |

 Notice of Deficiency

Respondent issued a notice of deficiency to
petitioners with respect to their 1988, 1989, and 1990
returns.  Among the other adjustments made in the notice,
respondent determined that the payment of $500,000

petitioner received from the Houston firm in 1988 was not a loan, as petitioners claimed, and should have been included in petitioners' income as ordinary income, less petitioner's basis of $195,351 (i.e., net ordinary income of $304,649).  Respondent also determined that the payments of $552,218 and $617,482 petitioner received in 1989 and 1990, respectively, from the Houston firm, are ordinary income, rather than capital gain, as reported by petitioners on their tax returns.

Respondent also determined that petitioners are liable for the addition to tax under section 6651(a)(1) for failure to timely file their 1988, 1989, and 1990 returns. Respondent determined that the extension of time to file each of petitioners' tax returns for 1988, 1989, and 1990 was invalid because in filing Form 4868, for each of those years, petitioners did not properly estimate their correct tax.  The notice of deficiency describes this determination as follows:

> Since your income tax returns for 1988, 1989 and
> 1990 were not filed within the time prescribed
> by law, and it is determined that the extensions
> you filed were invalid since you did not properly
> estimate your correct tax, 25 percent of the
> total underpayment of tax is added as provided
> by section 6651(a)(1) of the Internal Revenue
> Code * * *

Prior to trial, the parties stipulated to reduced tax deficiencies and additions to tax for 1988 and 1989. The revised deficiencies and additions to tax for those years are as follows:

| Year | Revised Deficiency | Revised Additions to Tax Sec. 6651(a)(1) |
|------|--------------------|-------------------------------------------|
| 1988 | $79,268 | $19,817 |
| 1989 | 77,687 | 19,422 |

With respect to 1990, the parties stipulated that there was an overassessment of tax of $11,472 and an overassessment of the addition to tax of $2,868.

Set out below is a summary to the adjustments made by respondent in the notice of deficiency and the adjustments agreed to by the parties:

Summary of Income Tax Changes by Notice of Deficiency
and Agreed Computation of Deficiencies

| Adjustments to Income--<br>Notice of Deficiency | Years Ending | | |
|---|---|---|---|
| | 12/31/88 | 12/31/89 | 12/31/90 |
| A. Agreed item--adjustment to income from the Houston firm | $4,593 | | |
| B. Schedule F income (cattle feeding business) | 46,000 | | |
| C. Schedule F expenses (cattle feeding business) | 9,803 | | |
| D. Schedule E passive activity loss (loss from condominiums) | 1,827 | $1,305 | $660 |
| E. Income (payments by the Houston firm of partnership interest) | 304,649 | 552,218 | 617,482 |
| F. Whipsaw adjustment to income (related to income from the Houston firm) | | | (166,667) |
| G. Partnership expense (claimed as offset to petitioner's income from the Houston firm) | 140,935 | | |
| H. Other gains and losses (from sale of airplane) | | (17,403) | |
| I. Constructive dividend (life insurance proceeds) | | 190,943 | |
| J. Schedule C expenses (disallowed expenses attributable to Corpus Christi office) | | 208,570 | 61,267 |
| K. Schedule K-1 1120S flow-through (disallowed expenses from professional corporation) | | | 54,929 |
| L. Capital gains and losses (disallowed capital loss carryover and losses claimed for worthless stock in Cooper's Alley & Compuprint and disallowed capital gains claimed for sale of partnership interest in the Houston firm) | 3,000 | (314,272) | (535,018) |

| M. Itemized deductions | (17,074) | 64,884 | 16,742 |
|---|---|---|---|
| Total adjustments per notice of deficiency: | 493,733 | 686,245 | 49,395 |
| Taxable income per return: | 319,525 | 82,640 | 438,332 |
| Adjusted taxable income per notice of deficiency: | 813,258 | 768,885 | 487,727 |

Adjustments to Income--Agreed
 Computation of Deficiencies

| A. Income (various capital losses from Cooper's Alley & Compuprint allowed) | (178,305) | (158,020) | (76,918) |
|---|---|---|---|
| B. Partnership expenses | (87,447) | | |
| C. Constructive dividend | | (190,943) | |
| D. Schedule C expenses | | (41,978) | (16,258) |
| E. Schedule K-1 1120S flow-through | | | (6,769) |
| F. Capital gains and losses | -- | -- | -- |
| G. Itemized deductions | 59,804 | 25,665 | 7,817 |
| Total adjustments per agreed computation: | (205,948) | (365,276) | (92,128) |
| Total taxable income as revised: | 607,310 | 403,609 | 395,599 |

OPINION

The addition to tax under section 6651(a)(1) applies in the case of a failure to file any return "on the date prescribed therefor (determined with regard to any extension of time for filing)". Sec. 6651(a)(1). As stated above, petitioners' liability for the additions under section 6651(a)(1) that were determined by respondent for 1988 and 1989, turns on whether petitioners'

accountants "properly estimated" petitioners' tax liability on the Forms 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, that were filed for those years. See sec. 1.6081-4(a)(4), Income Tax Regs. If petitioners' tax liability was not properly estimated, then the extensions of time to file are invalid and petitioners' returns are delinquent. Crocker v. Commissioner, 92 T.C. 899, 910 (1989). In that event, petitioners are liable for the addition to tax under section 6651(a)(1), unless they establish that the failure to file their returns by the date prescribed by law is due to reasonable cause and not due to willful neglect. Id. at 912-914.

Generally, individuals who compute their Federal income tax on the basis of the calendar year are required to file their return on or before April 15th following the close of such year. Sec. 6072(a). The Secretary of the Treasury or his delegate may grant a reasonable extension of time for filing a return. Sec. 6081(a). Regulations promulgated pursuant to that authority state that individual taxpayers may obtain an automatic 4-month extension of time to file their return. Sec. 1.6081-4(a)(1), Income Tax Regs. In order to do so, the taxpayer must prepare and sign a Form 4868, Application

for Automatic Extension of Time to File U.S. Individual Income Tax Return, and file the form with the appropriate internal revenue officer on or before the due date prescribed for filing the taxpayer's income tax return. Sec. 1.6081-4(a)(2) and (3), Income Tax Regs.  Section 1.6081-4(a)(4), Income Tax Regs., as in effect during the years in issue, provided that such application for extension:

> must show the full amount properly estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return.

A taxpayer will be treated as having "properly estimated" his tax liability, within the meaning of section 1.6081-4(a)(4), Income Tax Regs., quoted above, when he makes a bona fide and reasonable estimate of his tax liability based on the information available to him at the time he makes his request for an extension.  Crocker v. Commissioner, supra at 908.  As a prerequisite for this treatment, however, the taxpayer must make a bona fide and reasonable attempt to locate, gather, and consult information which will enable him to make a proper estimate of his tax liability.  Crocker v. Commissioner, supra.

As stated in section 1.6081-4(a)(4), Income Tax Regs., quoted above, the granting of an automatic extension of time within which a taxpayer may file an income tax return does not operate to extend the time for payment of any tax due on such return.  See Crocker v. Commissioner, supra at 905; sec. 1.6081-4(b), Income Tax Regs.  A taxpayer who computes his taxes on a calendar year basis must pay his taxes by the 15th of April following the close of such calendar year regardless of whether he has been granted an extension of time to file his return.  Secs. 6151(a); 6072(a).

In this case, petitioners ask the Court to find that the estimates of their tax liability made by their accountants on the Forms 4868 filed for 1988 and 1989 were proper.  According to petitioners, they made a "bona fide and reasonable estimate of their tax liability based upon the information available to petitioners at the time of the making of the extension requests."  Petitioners also assert that their accountants made "a bona fide and reasonable attempt to locate, gather and consult information which would enable them to make a reasonable estimate."

In the case of their 1988 tax liability, petitioners note that neither the Schedule K-1 from the Houston firm, nor the income statement from the cattle feeding business

was available until July or August 1989, after the Form 4868 was filed in April 1989, and petitioners argue that the estimates of their income from those activities were reasonable. Furthermore, petitioners contend that Mr. Harrison and their accountants made reasonable attempts to obtain accurate information from both the Houston firm and the cattle feeding business before the Form 4868 for 1988 was filed.

In the case of their 1989 tax liability, petitioners argue that their accountants also made a reasonable estimate of their tax liability based upon available information and that they made a reasonable attempt to obtain accurate information. They argue that Ms. Ruble's "oversight regarding capitalization of leasehold improvements" which caused the estimate to be understated should not cause the estimate to be considered improper.

Alternatively, petitioners argue, if the Court finds that proper estimates were not made for 1988 or 1989, then the Court should find that the additions to tax under section 6651(a)(1) determined by respondent are not applicable because petitioners' failure to timely file was due to reasonable cause and not due to willful neglect. Petitioners argue that they relied upon their accountants, Ms. Cates, Ms. Ruble, and Mr. Whittington "to prepare

proper estimates so as to cause the tax returns to be filed on time" and "[A]ny failure of Petitioners to file tax returns on time would have been the result of the failure of their accountants to make a proper estimate."

Respondent contends that the Forms 4868 filed by petitioners for the years 1988 and 1989 were invalid because petitioners failed to estimate properly their tax liability as required by section 1.6081-4(a)(4), Income Tax Regs. Respondent points out that petitioners' Forms 4868 for 1988 and 1989 estimated their tax liability to be $1,408 and $2,200, respectively, whereas petitioners paid $101,093 and $41,915 with their 1988 and 1989 returns, respectively. Respondent also notes that the parties have agreed that petitioners' corrected income tax liabilities for 1988 and 1989 are $176,998 and $116,389, respectively.

Respondent contends that petitioners have a history of failing to make proper estimates of their Federal tax liability. According to respondent, "[F]or each of the years 1986 through 1992, petitioners filed both Form 4868 and Form 2688 extension agreements" and "[F]or each of these years, petitioners paid 99 percent of their Federal income tax liability with their filed return in October."

Respondent asserts that petitioners' allegations that their estimates for the years in issue were reasonable,

"are not supported by any evidence."  To find otherwise, according to respondent, the Court would have to disregard "petitioners' past conduct in filing extensions and failing to make proper estimated tax payments" and the Court would have to "accept the unsupported testimony of petitioners and their representatives."  Finally, respondent argues that petitioners cannot avoid the delinquency addition by claiming reasonable reliance on their accountants. According to respondent, petitioners have not shown "'that the advisor had sufficient knowledge of the taxpayer's relevant financial circumstances to make an informed decision.'" (quoting Stovall v. Commissioner, T.C. Memo. 1983-450, affd. 762 F.2d 891 (11th Cir. 1985)).

Respondent's position in this case places great emphasis on "the past history of petitioners' failure to make proper estimates of Federal tax liability". However troubling we find that history to be, we are mindful of our opinion in Crocker v. Commissioner, 92 T.C. 899, 906 (1989), which states that "a mere comparison of estimated tax liabilities with true tax liabilities will not reveal whether petitioners' estimates were 'proper.'" In that case, we continued with the following:

> An estimate is no more than that.  It is, "A
> valuing or rating by the mind, without actually

measuring, weighing or the like. A rough or approximate calculation only." Black's Law Dictionary, 494 (5th ed. 1979).

To require exactitude in the estimation called for under section 1.6081-4(a)(4), Income Tax Regs., would be unreasonable. The taxpayer would have no need for an extension of time within which to file his return if he could determine his true tax liability at the time he submits the Form 4868. The mere fact that petitioners underestimated their 1981 and 1982 tax liabilities, standing alone, does not cause their applications to be invalid and the auto- matic extensions to be void. See Hudspeth v. Commissioner, T.C. Memo. 1985-628.

Id. at 906-907; see also Arnaiz v. Commissioner, T.C. Memo. 1992-729. ("The mere fact that petitioners in fact underestimated their 1985 tax finally shown to be due does not mean that they did not properly estimate their tax; the standard is whether they made a 'bona fide and reasonable attempt' to secure information * * * necessary to make a 'bona fide' and reasonable estimate' of their tax liabilities. Crocker v. Commissioner, supra at 907-908.")

Respondent's position that petitioners' allegations "are not supported by any evidence" disregards the evidence advanced by petitioners, consisting of Mr. Harrison's testimony, the testimony of his bookkeeper, Ms. Cates, and the testimony of the certified public accountants, Mr. Whittington and Ms. Ruble, whom petitioners retained to prepare and submit their income tax returns. We found

the testimony of petitioners' witnesses to be credible and decline respondent's invitation to dismiss it as "simply the unsupported self-serving testimony of petitioners." In this regard, we note that, as of the time of trial, Ms. Ruble had no ongoing business or other connection with petitioners or her former employer, Mr. Whittington.

The problem with petitioners' evidence, however, is that it does not go far enough.  Petitioners have shown that for the year 1988, after making reasonable inquiry of petitioner's former law firm and petitioner's cattle feeding business, petitioners' accountants estimated petitioners' income from those activities.  According to petitioners:  "These two items alone accounted for more than the difference between the amount of tax shown due on the 1988 return and the amount of tax estimated on Form 4868 for 1988."  In effect, petitioners have limited their case to showing the reasonableness of their estimated tax liability for 1988, $1,408, as compared to the total tax of $96,418 reported on their 1988 return.  Petitioners have not addressed the adjustments determined in the notice of deficiency, as revised by the agreed computation of the 1988 deficiency, on the basis of which their total tax liability is $175,686, or $79,268 more than the tax reported on their return.  Nor have petitioners shown any

reason to conclude that it is unnecessary to evaluate the reasonableness of petitioners' estimate for 1988 in terms of their full tax liability, what Crocker v. Commissioner, supra at 906, referred to as the taxpayer's "true tax liability."  As a result, petitioners have not established the reasonableness of the estimate made on petitioners' behalf on Form 4868 for 1988.  Accordingly, we find that petitioners have not met their burden of disproving respondent's determination that the Form 4868 for 1988 was void and that petitioners failed to make a timely return for 1988.

Similarly, petitioners' evidence for 1989 shows that in computing petitioners' estimated tax liability Ms. Ruble assumed that all of the amounts classified by Ms. Cates as office expenses for petitioners' Corpus Christi law office were fully deductible, whereas that total included approximately $80,000 of capital expenditures.  According to petitioners:  "That classification difference, capitalized vs. deductible leasehold improvements, accounted for the difference in tax liability between the amount estimated and that shown due on the return."  As was true in the case of 1988, petitioners have limited their case to showing the reasonableness of their estimated tax liability for 1989,

$2,200, as compared to total tax of $38,702 reported on their 1989 return. Petitioners have not addressed the adjustments determined in the notice of deficiency, as revised by the agreed computation of the 1989 deficiency, on the basis of which their total tax liability is $116,389, or $77,687 more than the tax reported on their return, nor have petitioners shown any reason to conclude that it is unnecessary to evaluate the reasonableness of petitioners' estimate for 1989 in terms of their true tax liability. As a result, petitioners have not established the reasonableness of the estimate made on petitioners' behalf on Form 4868 for 1989. Accordingly, we find that petitioners have not met their burden of disproving respondent's determination that Form 4968 for 1989 was void and that petitioners failed to make a timely return for 1989.

This brings us to petitioners' alternative contention that, even if we find that petitioners failed to file timely returns, we should, nevertheless, find that the additions to tax under section 6651(a)(1), as determined by respondent, are not applicable because petitioners' failure to timely file was due to reasonable cause and not due to willful neglect. In this regard, petitioners assert that they relied upon their accountants to compute their

estimated tax liability for each of the subject years. Respondent asks the Court to reject this contention and suggests that petitioners failed to supply their accountants with complete and accurate records from which to make a reasonable estimate of their tax liability.

As a preliminary matter, we note that there is no evidence in the record of this case that petitioners' failure to file timely returns for 1988 and 1989 resulted from "willful neglect" in the sense of "a conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985). Thus, this issue turns on whether there was "reasonable cause" within the meaning of section 6651(a)(1) for petitioners' failure to file timely returns for 1988 and 1989. According to section 301.6651-1(c)(1), Proced. & Admin. Regs., "reasonable cause" is found "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time". See generally Roberts v. Commissioner, 860 F.2d 1235, 1240-1241 (5th Cir. 1988), affg. T.C. Memo. 1987-391.

The late filing in this case was not due to the failure by petitioner's accountants to ascertain the correct deadline for filing petitioners' 1988 and 1989 returns or to the accountants' failure to file the subject

returns through oversight.  If it were, petitioners could not escape the application of section 6651(a)(1) by claiming reliance on their accountants.  See United States v. Boyle, supra at 252; McGee v. Commissioner, 979 F.2d 66, 70-71 (5th Cir. 1992), affg. per curiam T.C. Memo. 1991-510; Denenburg v. United States, 920 F.2d 301 (5th Cir. 1991).  For example, in United States v. Boyle, supra, the executor of an estate, argued that reliance on an attorney was "reasonable cause" for failure to meet the filing deadline for an estate tax return.  The Court stated that it was not "reasonable" for the executor to "assume" that the attorney would comply with the statute.  United States v. Boyle, supra at 250.  The Supreme Court held:  "The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under §6651(a)(1)."  United States v. Boyle, supra at 252.  In its opinion, the Supreme Court made it clear that the case before it was not one in which "a taxpayer has relied on the erroneous advice of counsel concerning a question of law", such as the advice of an accountant or attorney that it was unnecessary to file a return.  Id. at 250.

In this case, petitioners and their accountants did more than the executor and his lawyer in United States

v. Boyle, supra.  In this case, petitioners' accountants prepared Forms 4868, including the accountants' computation of petitioners' estimated tax liability, and filed the forms on petitioners' behalf before the filing deadline. The filing of each of these forms on which petitioners' accountants had estimated petitioners' tax liability for the year constituted the advice of petitioners' accountants not only as to petitioners' estimated tax liability but also as to petitioners' filing obligations.  This is the type of substantive advice of an accountant as to which it is reasonable for a taxpayer to rely.  Id. at 251.  The late filing in this case was not due to an oversight or inattention on the part of petitioners or their accountants.  It was due to the advice of petitioners' accountants that petitioners' tax liability was properly estimated on the Forms 4868 filed for 1988 and 1989, and that they had validly claimed an automatic extension to file the return for each year.  This advice, on which petitioners relied, constitutes "reasonable cause" for petitioners' failure to file timely returns.  See Commissioner v. American Association of Engrs. Employment, Inc., 204 F.2d 19, 21 (7th Cir. 1953), affg. a Memorandum Opinion of this Court; Burton Swartz Land Corp. v. Commissioner, 198 F.2d 558, 560 (5th Cir. 1952), affg. in

part and revg. in part a Memorandum Opinion of this Court;

Haywood Lumber & Mining Co. v. Commissioner, 178 F.2d 769,

771 (2d Cir. 1950), modifying 12 T.C. 735 (1949); Orient

Inv. & Fin. Co. v. Commissioner, 166 F.2d 601, 603-604

(D.C. Cir. 1948); Furman v. Commissioner, T.C. Memo. 1998-

157.

The only argument made by respondent regarding

petitioners' reliance on their accountants is the

following:

> Petitioners cannot simply lay the blame
> on accountants or bookkeepers for failing to
> obtain the information necessary to make a proper
> estimate.  "It is the taxpayer's obligation to
> supply his or her accountant with complete and
> accurate records from which to make a reasonable
> estimate of the tax liability."  Boatman v.
> Commissioner, T.C. Memo. 1995-356 (citing Estate
> of Duttenhofer v. Commissioner, 49 T.C. 200, 205
> (1967), aff'd, 410 F.2d 302 (6th Cir. 1969)).
> Neither can petitioners avoid the I.R.C. § 6651
> (a)(1) penalty by attempting to lay the blame
> on a representative for failing to timely file
> a return.  "To demonstrate reasonable reliance,
> it must be shown that the advisor had sufficient
> knowledge of the taxpayer's relevant financial
> circumstances to make an informed decision."
> Stovall v. Commissioner, T.C. Memo. 1983-450
> (citing Yale Avenue Corp. v. Commissioner, 58
> T.C. 1062 (1972) and Railroad Realty Co. v.
> Commissioner, 25 T.C. 458 (1955)).

We find no support in the record for respondent's argument.

Petitioners' accountants had a longstanding relationship

with petitioners and a close working relationship with petitioners' bookkeeper, Ms. Cates.  There is no evidence that petitioners or their bookkeeper withheld any information from their accountants.

Based on the foregoing and concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.