T.C. Memo. 2006-269

UNITED STATES TAX COURT

FREDERIC W. THRANE, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7367-04.                    Filed December 18, 2006.

<u>Robert J. Gumser</u>, for petitioner.

<u>Michael S. Hensley</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined an income tax deficiency
of $80,922 and a section 6662(a)[1] accuracy-related penalty of
$14,918 with respect to petitioner's 2001 taxable year.  After

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986 as in effect for the taxable
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

concessions,[2] the issue left for decision is whether petitioner is liable for an accuracy-related penalty under section 6662(a) with respect to the understatement of tax on his 2001 Federal income tax return. We hold that petitioner had reasonable cause and acted in good faith with respect to the associated underpayment and is therefore not liable for an accuracy-related penalty.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Pacific Grove, California.

Petitioner was the sole shareholder of Windsor Capital Mortgage Corp. (Windsor), which was engaged in real estate credit activities, from its incorporation in 1989 through 2001. Petitioner was employed full time as president of Windsor during 2001. Petitioner elected for Windsor to be taxed under the provisions of subchapter S of chapter 1, subtitle A, of the Internal Revenue Code, effective July 1, 1998, and the election was in effect through 2001.

---

[2] Petitioner concedes that he failed to report $173,093 of ordinary income in 2001. Respondent concedes that petitioner did not have an additional $27,840 of income determined for that year, as had been reported to respondent on an erroneous Form W-2, Wage and Tax Statement, issued to petitioner.

Petitioner retained a certified public accounting firm, Oliva, Sahmel & Goddard (OSG), to provide tax and accounting services both for Windsor and for himself. For 2001, OSG provided tax and financial accounting services to Windsor, including the preparation of Windsor's Federal income tax return, and prepared petitioner's individual Federal income tax return. Windsor employed a part-time bookkeeper/accountant who served as the main point of contact between OSG and Windsor. Windsor and petitioner had been clients of OSG for at least 3 years at the time the 2001 returns were prepared.

Philip Wright was a certified public accountant employed by OSG since 1999. In March of 2002, Wright prepared Windsor's audited financial statements for the year ended December 31, 2001. The audited financial statements were signed by the OSG audit partner, Thomas Goddard, and were prepared for, among other reasons, compliance with requirements set by the U.S. Department of Housing and Urban Development for mortgage lenders.

After completion of the audited financial statements, Wright prepared Windsor's 2001 Form 1120S, U.S. Income Tax Return for an S Corporation. The Form 1120S was prepared using a tax accounting computer program that electronically stored the return, matched debits and credits, and allowed other OSG personnel to electronically access the return. After Wright

completed it, the Form 1120S was submitted to Ronald Sahmel, an OSG partner, who reviewed and signed it as the preparer on June 27, 2002.

The Form 1120S was then hand delivered to Robert Delgado at Windsor's corporate offices. He signed it on July 1, 2002, in his capacity as Windsor's corporate secretary and mailed it.[3] The Form 1120S included a Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., for petitioner, which reported that petitioner had ordinary income of $587,938 from Windsor and had received $412,000 in distributions. A copy of the Schedule K-1 was issued to petitioner.

As filed, the Form 1120S did not separately state any amount for "Compensation of officers" on line 7. Instead, an aggregate figure of $426,743 for all compensation, both officers' and other employees', was listed on line 8, "Salaries and wages (less employment credits)". After the Form 1120S was filed, OSG obtained information that Windsor's officer compensation for 2001 was $173,093. Thereafter, $173,093 was entered into the electronically stored version of the Form 1120S on line 7 as "Compensation of officers". However, no correlative adjustment was made to line 8 for "Salaries and wages (less employment credits)". Consequently, the $173,093 in officer compensation

---

[3] Respondent received the Form 1120S timely on July 7, 2002.

was counted twice (as a deduction) on the electronically stored version of the Form 1120S, resulting in an erroneous $173,093 understatement of ordinary income from Windsor's operations on the electronically stored Form 1120S; namely, $414,845 rather than $587,938. As petitioner was Windsor's sole shareholder, a corresponding error was carried through to the electronically stored version of the Schedule K-1 for petitioner, so that it likewise reported $414,845 rather than $587,938 as petitioner's share of ordinary income.

After the Form 1120S had been filed, Sahmel prepared petitioner's 2001 Form 1040, U.S. Individual Income Tax Return. Following OSG standard practice, Sahmel used the electronically stored version of petitioner's Schedule K-1 from Windsor to prepare the Form 1040. That version, however, contained the $173,093 understatement of ordinary income as $414,845 rather than $587,938. The erroneous $414,845 figure for Windsor's ordinary income was entered once on a worksheet accompanying petitioner's Schedule E, Supplemental Income and Loss. On the worksheet, the $414,845 figure was offset by $36,417 in supplemental business expenses before being recorded on the face of the Schedule E as $378,428 in income from Windsor. The Form 1040 was signed by Sahmel as preparer and by petitioner.

OPINION

Petitioner now concedes that he failed to report $173,093 of income from Windsor in 2001. We must decide whether he is liable for a section 6662(a) accuracy-related penalty based on a substantial understatement of income tax, as determined by respondent. See sec. 6662(a) and (b)(2). A "substantial understatement" exists for this purpose if the amount of tax required to be shown on the return exceeds that shown by the greater of 10 percent of the tax required to be shown or $5,000. Sec. 6662(d)(1)(A).

The Commissioner has the burden of production under section 7491(c) with respect to the liability of any individual for a penalty imposed by the Internal Revenue Code and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination as to the penalties is incorrect or that the taxpayer had reasonable cause or substantial authority for his position. See id. at 447; sec. 1.6664-4, Income Tax Regs.

The $173,093 omission of income conceded by petitioner produces an understatement exceeding the greater of $5,000 or 10 percent of the tax required to be shown on his return.

Accordingly, respondent has satisfied his burden of production and petitioner bears the burden of establishing the applicability of the reasonable cause exception.

A penalty under section 6662(a) will not be imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The determination as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1) and (c), Income Tax Regs. "An isolated computational or transcriptional error generally is not inconsistent with reasonable cause and good faith."  Sec. 1.6664-4(b)(1), Income Tax Regs.  Further,

> Reliance * * * on the advice of a professional tax advisor * * * does not necessarily demonstrate reasonable cause and good faith.  * * *  Reliance on * * * professional advice, or other facts, however, constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. * * *  [Id.]

In United States v. Boyle, 469 U.S. 241, 251-252 (1985), the Supreme Court held that, because it requires no tax expertise to ascertain a deadline and meet it, a taxpayer's reliance on a tax professional to make a timely filing of a return does not constitute reasonable cause for a late filing of a return.  In so holding, the Supreme Court also stated a corollary:  "When an accountant or attorney advises a taxpayer on a matter of tax law,

* * * it is reasonable for the taxpayer to rely on that advice."
Id. at 251.

Whether reasonable cause exists when the taxpayer has relied on an accountant or attorney to prepare a return correctly depends on the facts and circumstances. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002). Compare Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661-663 (1987) (reliance on accountant with complete information regarding taxpayer's business activities not reasonable cause where taxpayer's cursory review of return would have revealed errors), and Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974) (reliance on accountant with complete information on transaction not reasonable cause even where proper treatment of item "requires a fair degree of expertise and sophistication"),[4] with Harrison v. Commissioner, T.C. Memo. 1998-417 (taxpayer's reliance on accountant's computation of estimated tax liability for purposes of extension request is reasonable cause for late filing), and Drummond v. Commissioner, T.C. Memo. 1997-71 (to same effect for extension request; to same effect for other items where taxpayer's review of return would not have revealed errors), affd. in part and revd. in part without published opinion 155 F.3d 558 (4th Cir.

---

[4] We need not and do not decide herein whether the holding in Pritchett v. Commissioner, 63 T.C. 149 (1974), can be fully reconciled with United States v. Boyle, 469 U.S. 241 (1985).

1998).  In appropriate circumstances, nonetheless, a taxpayer's reliance on his accountant's preparation of the return, including the computations thereon, may constitute reasonable cause.  See Harrison v. Commissioner, supra; Drummond v. Commissioner, supra.

In order for a taxpayer's reliance on professional advice to constitute reasonable cause to negate a section 6662(a) accuracy-related penalty, the taxpayer must show that (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.  Neonatology Associates, P.A. v. Commissioner, supra at 98; see also Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203, 1212 & n.8 (9th Cir. 2005), affg. 121 T.C. 89 (2003); Cramer v. Commissioner, 101 T.C. 225, 251 (1993), affd. 64 F.3d 1406 (9th Cir. 1995).

On the basis of our review of all the facts and circumstances, we conclude that petitioner had reasonable cause with respect to the substantial understatement in this case. Except for the single error arising from the inadvertent double-deducting of Windsor's officer compensation, OSG competently prepared Windsor's and petitioner's returns for 2001; there is no evidence of other defects in either, for the year in issue or prior years.  Thus, petitioner's reliance on OSG's competence was reasonably justified.  Windsor, which petitioner controlled,

employed a part-time bookkeeper/accountant to serve as a contact with OSG, and OSG prepared Windsor's audited financial statements.  We are consequently satisfied that OSG had full access to all necessary information and that the understatement on petitioner's return is not attributable to petitioner's failure to provide accurate information.

We also conclude that petitioner actually and reasonably relied in good faith on OSG's professional expertise.  Respondent argues otherwise, relying on Metra Chem Corp. v. Commissioner, supra.  Respondent seeks to draw a parallel between the instant case and Metra Chem, where two taxpayer-shareholders of a C corporation failed to report $10,000 and $6,800, respectively, in cash dividends paid to them by the corporation, amounts which were large in relation to the taxpayers' other income (over 20 percent thereof).  The taxpayers argued that they had reasonable cause for the omissions because they relied on their accountant to prepare their returns.  The accountant had also prepared the corporate return and had access to the corporate books showing the dividends.  We declined to find reasonable cause, for two reasons.  First, reliance on professional advice constitutes reasonable cause only where complex transactions are involved, and reporting the receipt of cash dividends was not a complex transaction, we reasoned.  Second, we noted that a review of the taxpayers' returns would have revealed the erroneous omissions.

Metra Chem is distinguishable from the instant case.  The computation of the income of a mortgage lending business conducted in S corporation form, which must be reported on the shareholders' individual returns without regard to whether it is distributed to them, is a more complex undertaking than the straightforward reporting of a cash dividend received by a C corporation shareholder.  The erroneous income figure for Windsor ($414,845) appeared only on a worksheet to the Schedule E attached to petitioner's Form 1040.  That figure required a further offsetting adjustment before being reported on the face of the Schedule E as $378,428.  Thus, only a rather detailed tracing through the Schedule E worksheet would have alerted petitioner to the error at issue.  Moreover, even assuming petitioner had spotted the erroneous $414,845 income figure, that number approximated the $412,000 distributed to him from Windsor during 2001.  Thus, petitioner may have surmised, as a layman relying on accountants, that he was reporting as taxable income from Windsor the amounts distributed to him.  In sum, the discrepancy here arose in the context of reporting a transaction (an S corporation shareholder's recognition of passthrough income from a mortgage lender) that was more complex, and less transparent, than that at issue in Metra Chem.

To be sure, the $173,093 discrepancy here was large, but smaller in relative terms than the errors made by the taxpayers'

accountants in <u>Harrison v. Commissioner</u>, <u>supra</u>, who computed the taxpayers' estimated tax liability for extension purposes as $1,408 and $2,200 for 1988 and 1989, respectively, when the amount ultimately reported as due on the return was $96,418 (ultimately stipulated as $175,686) and $38,702 (ultimately stipulated as $116,389), respectively.  Notwithstanding these discrepancies, we concluded that the taxpayers in <u>Harrison</u> had reasonable cause for late filing as a result of their reliance on their accountants to perform the calculations of estimated tax necessary to obtain extensions.

Finally, as noted above, the regulations provide that an isolated computational error generally is not inconsistent with reasonable cause and good faith.  The error underlying petitioner's income omission of $173,093, wherein his accountants failed to remove that amount from salaries generally when they separately stated it as officer compensation in the electronically stored version of petitioner's S corporation's Form 1120S, resembles the kind of isolated computational error generally intended to give rise to relief.

We accordingly hold that petitioner had reasonable cause for the understatement attributable to his failure to report $173,093 of income from Windsor in 2001.

To reflect the foregoing, and after concessions by both parties,

<u>Decision will be entered</u>

<u>under Rule 155.</u>