T.C. Memo. 2014-250

UNITED STATES TAX COURT

STEVEN EDWARD HILLMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30942-12.                    Filed December 15, 2014.

Steven Edward Hillman, pro se.

<u>Kelly M. Davidson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a $176,016 deficiency in

petitioner's 2005 Federal income tax, a $43,352.75 addition to tax under section

6651(a)(1),[1] and a $34,682.20 accuracy-related penalty under section 6662(a).  All

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the year in issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

[*2] subsequent monetary values have been rounded to the nearest whole dollar.

After concessions by the parties the issues for decision are: (1) whether petitioner disbursed an additional $13,404 to or on behalf of his client during his 2005 tax year; (2) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file; and (3) whether petitioner is liable for an accuracy-related penalty under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the first supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Ohio at the time he filed his petition.

Petitioner was a personal injury attorney during 2005, and his practice focused on representing plaintiffs in their claims against insurance companies. Petitioner received $32,001 from Sequent, Inc., during 2005, and this amount was reported to him on Form W-2, Wage and Tax Statement.[2] Also during 2005, certain insurance companies and a law firm paid to petitioner gross proceeds totaling $419,997 in connection with his prosecution of insurance claims on behalf

---

[2]Respondent's pretrial memo indicates that Sequent, Inc., is the payroll company used by petitioner's employer, Hillman & Wolery, LLC (Hillman & Wolery).

[*3] of his clients. All but $1,500 of these funds was reported to petitioner as "[g]ross proceeds paid to an attorney" on Forms 1099-MISC, Miscellaneous Income.[3] Upon receipt, petitioner deposited the funds into his attorney trust checking account and disbursed specified amounts to or on behalf of his clients and to Hillman & Wolery. The balance remaining in petitioner's attorney trust checking account after disbursal represented a contingency fee that he earned in prosecuting client claims.

Petitioner received the aforementioned $419,997 from the following: (1) Ohio Fair Plan Underwriting Association (OFPUA); (2) Allstate Insurance Co. (Allstate); (3) the Cincinnati Insurance Co. (Cincinnati Insurance); (4) Nationwide Mutual Insurance Co. (Nationwide); (5) Leader Insurance; and (6) the law firm of Blaugrund, Herbert & Martin (Blaugrund). Of the $419,997 that petitioner received during 2005, he has substantiated disbursements of $257,915 to or on behalf of his clients and $39,202 to Hillman & Wolery. The proceeds that petitioner received and the disbursements from his attorney trust checking account associated with each transaction are detailed separately below.

---

[3]The Forms 1099-MISC issued to petitioner indicate that he received $418,497 during 2005. The $1,500 difference is due to the fact that while the Form 1099-MISC issued to petitioner from Leader Insurance Co. (Leader Insurance) shows gross proceeds paid to an attorney of $13,250, the parties agree that petitioner in fact received $14,750 from Leader Insurance.

**[*4]** OFPUA and Allstate

Petitioner received $21,879 and $48,000 from OFPUA and Allstate, respectively, during 2005. OFPUA and Allstate paid the $21,879 and $48,000 with respect to a claim filed by one of petitioner's clients. These amounts were reported to petitioner on Forms 1099-MISC as "[g]ross proceeds paid to an attorney". Of the $69,879 that petitioner received from OFPUA and Allstate, he has substantiated disbursement of $46,586 to or on behalf of his client and $7,293 to Hillman & Wolery. The parties stipulate that the remaining $16,000 from this transaction is income to petitioner for 2005.

Cincinnati Insurance

Petitioner received $85,000 from Cincinnati Insurance during 2005. Cincinnati Insurance paid the $85,000 with respect to a claim filed by one of petitioner's clients. This amount was reported to petitioner on Form 1099-MISC as "[g]ross proceeds paid to an attorney". Of the $85,000 that petitioner received from Cincinnati Insurance, he has substantiated disbursement of $45,862 to or on behalf of his client and $8,876 to Hillman & Wolery. The parties stipulate that the remaining $30,262 from this transaction is income to petitioner for 2005.

**[*5]** Leader Insurance

Petitioner received $14,750 from Leader Insurance during 2005. Leader Insurance paid the $14,750 with respect to a claim filed by one of petitioner's clients. Of the $14,750 that petitioner received from Leader Insurance, he has substantiated disbursement of $12,204 to or on behalf of his client[4] and $2,200 to Hillman & Wolery. The parties stipulate that the remaining $346 from this transaction is income to petitioner for 2005.

Blaugrund

Petitioner received $368 from Blaugrund during 2005. This amount was reported to petitioner on Form 1099-MISC as "[g]ross proceeds paid to an attorney". Petitioner does not allege that he disbursed any portion of this amount to or on behalf of a client or to Hillman & Wolery. Accordingly, the $368 from Blaugrund is income to petitioner for his 2005 tax year.

---

[4]Of the $12,204, $1,709 was paid to Attorney Allen Bolen as reimbursement for costs incurred by Mr. Bolen before the case was referred to petitioner.

**[*6]** <u>Nationwide</u>

Petitioner received $250,000 from Nationwide during 2005. Nationwide paid the $250,000 with respect to a claim filed by one of petitioner's clients. Petitioner testified that the $250,000 payment from Nationwide was reported to him on Form 1099-MISC. Of that $250,000, petitioner has substantiated disbursement of $153,263 to or on behalf of his client and $20,833 to Hillman & Wolery. Petitioner substantiated these disbursements, totaling $174,096, with canceled checks from his attorney trust checking account. Petitioner contends that he disbursed an additional $13,404 to or on behalf of his client associated with this transaction, and respondent disputes this assertion.

For clarity, the following table summarizes petitioner's receipts and disbursements discussed above:

| Payor | 1099 Amounts received | Disbursed to/for client | Disbursed to H&W | Income |
|---|---|---|---|---|
| OFPUA/Allstate | $69,879 | $46,586 | $7,293 | $16,000 |
| Cincinnati Ins. | 85,000 | 45,862 | 8,876 | 30,262 |
| Leader Ins. | 14,750 | 12,204 | 2,200 | 346 |
| Blaugrund | 368 | -0- | -0- | 368 |
| Nationwide | 250,000 | [1]153,263 | 20,833 | [2]75,904 |
| | | | | |
| Total | | | | 122,880 |

[1]Petitioner claims to have disbursed an additional $13,404 during 2005.
[2]This amount depends on our determination of petitioner's disbursements concerning the Nationwide transaction.

[*7]  Petitioner did not timely file a Federal income tax return for 2005.  On August 14, 2009, respondent mailed to petitioner a notice of deficiency for his 2005 tax year (first notice of deficiency), determining a $34,189 deficiency and additions to tax under section 6651(a)(1) and (2) of $7,106 and $5,685, respectively, and section 6654(a) of $1,255.[5]  Petitioner did not petition the Tax Court from the first notice of deficiency.  On February 8, 2010, respondent assessed the deficiency, additions to tax, and interest arising from the first notice of deficiency.

On July 7, 2010, the Internal Revenue Service's (IRS) Automated Substitute for Return department received from petitioner an unsigned Form 1040, U.S. Individual Income Tax Return, and an associated Form 2848, Power of Attorney and Declaration of Representative, sent from petitioner for his 2005 tax year (unsigned July 7, 2010, Form 1040).  The unsigned July 7, 2010, Form 1040 shows a filing status of married filing jointly for petitioner's 2005 tax year and reports wages earned of $32,001.  Respondent did not process the unsigned July 7, 2010, Form 1040.

---

[5]The first notice of deficiency was based primarily on $32,001 in wages and $85,000 in nonemployee compensation.  It was not based on the $419,997 of gross proceeds paid to an attorney reported on the Forms 1099-MISC for petitioner's 2005 tax year.

**[*8]**   On September 1, 2010, respondent received from petitioner a signed Form 1040X, Amended U.S. Individual Income Tax Return, for 2005 (September 1, 2010, Form 1040X).  The September 1, 2010, Form 1040X shows a filing status of married filing separately and reports no gross income.  Respondent processed the September 1, 2010, Form 1040X.

On October 5, 2011, the IRS received an unsigned Form 1040X for petitioner's 2005 tax year (unsigned October 5, 2011, Form 1040X).  The unsigned October 5, 2011, Form 1040X shows a filing status of married filing separately and reports no gross income.  Respondent did not process the unsigned October 5, 2011, Form 1040X.

On November 28, 2011, respondent abated the February 8, 2010, assessment arising from the first notice of deficiency and issued a letter to petitioner advising of the abatement.

On September 27, 2012, respondent mailed to petitioner a second notice of deficiency (second notice of deficiency) for 2005, determining a deficiency of $176,016, an addition to tax under section 6651(a)(1) of $43,353, and an accuracy-related penalty under section 6662(a) of $34,682.  Respondent issued the second notice of deficiency on the basis of petitioner's September 1, 2010, Form

**[*9]** 1040X. Petitioner timely filed a petition disputing the determinations in the second notice of deficiency.

## OPINION

### 1. The Nationwide Transaction

The first unresolved issue is whether petitioner disbursed an additional $13,404 from the $250,000 Nationwide settlement. The parties stipulate that petitioner has substantiated disbursements totaling $174,096 from the Nationwide settlement, which consists of: (1) $153,263 of disbursements to or on behalf of petitioner's client and (2) $20,833 of disbursements to Hillman & Wolery. Respondent argues that the remaining balance of $75,904 (i.e., $250,000 – $174,096) is income to petitioner for 2005. Petitioner contends that he disbursed an additional $13,404 from the $250,000 Nationwide settlement, bringing his total disbursements associated with the Nationwide transaction to $187,500.

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The Code and the regulations thereunder require the taxpayer to maintain records sufficient to substantiate gross income and the amount of any deduction claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. The failure to keep

**[*10]** and present such records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, at *17.

Gross income includes all income from whatever source derived, including compensation for services, fees, commissions, fringe benefits, similar items, and gains derived from dealings in property. Sec. 61(a). As a general rule any item of gross income must be included in the gross income of a cash basis taxpayer for the taxable year in which received. Sec. 451(a). "We accept as sound law the rule that a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit." Diamond v. Commissioner, 56 T.C. 530, 541 (1971), aff'd, 492 F.2d 286 (7th Cir. 1974).

During 2005 petitioner received "[g]ross proceeds paid to an attorney" of $419,997 resulting from his prosecution of claims against insurance companies. However, petitioner was not entitled to the entire $419,997 upon receipt, because he was acting as an agent or conduit on behalf of his clients. The gross proceeds that petitioner received from the insurance companies and the law firm were deposited into his attorney trust checking account and subsequently disbursed to or on behalf of his clients and to Hillman & Wolery. Therefore, petitioner need only recognize as gross income the balance of the gross proceeds received from

**[*11]** the insurance companies and the law firm after substantiating disbursements to or on behalf of his clients and to Hillman & Wolery.

Respondent concedes that petitioner has substantiated disbursements totaling $297,117 from his attorney trust checking account during 2005. These disbursements consist of: (1) $53,879 from the OFPUA and Allstate transaction; (2) $54,738 from the Cincinnati Insurance transaction; (3) $14,404 from the Leader Insurance transaction; and (4) $174,096 from the Nationwide transaction. Petitioner contends that he disbursed more than $174,096 from the Nationwide settlement. Specifically, petitioner argues that he disbursed an additional $13,404 from the Nationwide settlement, which includes (1) an $8,936 payment to State Farm Insurance Cos. (State Farm) made on behalf of his client and (2) a $4,468 payment made directly to his client. Accordingly, we must determine whether petitioner has substantiated payments totaling $13,404 to State Farm and his client.

In support of his contention that he disbursed $8,936 to State Farm, petitioner introduced a copy of a Hillman & Wolery letter dated December 28, 2005, to a State Farm representative. In the letter petitioner states: "Per your letter and facsimile of December 28, 2005, I have enclosed a check on behalf of * * * [my client] in the amount of $8,93[6] * * * as full payment for your

**[*12]** subrogation rights." Included at the bottom of the letter is a photocopy of a check dated December 28, 2005, payable to State Farm for $8,936.

Likewise, to support his contention that he disbursed $4,468 to his client, petitioner introduced a copy of a Hillman & Wolery letter dated December 29, 2005, to his client. In the letter petitioner advises his client that he had sent the $8,936 check to State Farm, that he kept $13,404 in his attorney trust checking account, and that the client is entitled to $4,468. Included at the bottom of the letter to his client is a photocopy of a check dated December 29, 2005, payable to his client for $4,468. Petitioner also introduced a copy of a typewritten settlement analysis, showing a breakdown with respect to the Nationwide transaction. The settlement analysis includes, inter alia, client information and amounts of funds received and disbursed.

The letters and photocopies of checks to State Farm and to his client were part of petitioner's business records and reflect transactions that are consistent with his other business dealings. Petitioner testified in a credible manner regarding the making of these payments.

We find that petitioner substantiated additional disbursements totaling $13,404 during 2005. Accordingly, we hold that petitioner is entitled to a

**[*13]** deduction from gross income of $13,404 in addition to the agreed disbursements totaling $174,096 from the Nationwide transaction.

2. Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax of 5% per month of the amount of tax required to be shown on the return, not to exceed 25%, for failure to file a return on the date prescribed unless the taxpayer can establish that the failure is due to reasonable cause and not due to willful neglect. To prove reasonable cause for a failure to timely file, the taxpayer must show that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The determination of whether reasonable cause exists is based on all the facts and circumstances. Estate of Hartsell v. Commissioner, T.C. Memo. 2004-211, 2004 Tax Ct. Memo LEXIS 221, at *9.

Section 6011(a) provides that "any person made liable for any tax * * * shall make a return * * * according to the forms and regulations prescribed by the Secretary." A return required to be made "shall contain or be verified by a written declaration that it is made under the penalties of perjury." Sec. 6065. Section 6061(a) provides that "any return, statement, or other document required to be

**[\*14]** made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary." The regulations promulgated under section 6061 provide: "Each individual * * * shall sign the income tax return required to be made by him, except that the return may be signed for the taxpayer by an agent who is duly authorized in accordance with paragraph (a)(5) or (b) of § 1.6012-1 to make such return." Sec. 1.6061-1(a), Income Tax Regs. "Failure to satisfy the requirements for filing a return is fatal to the validity and the timeliness of the return." Elliott v. Commissioner, 113 T.C. 125, 128 (1999).

Petitioner's 2005 return was required to be filed on or before April 17, 2006. See sec. 6072(a). The record before the Court establishes that petitioner failed to file a valid 2005 tax return on or before this date. Petitioner's unsigned July 7, 2010, Form 1040 does not meet the requirements of a validly filed return because it was not signed by petitioner or petitioner's duly authorized agent. Even if petitioner signed the unsigned July 7, 2010, Form 1040, the filing date occurred after the April 17, 2006, deadline.[6] We find that petitioner's signed September 1,

_____

[6]Petitioner also contends that he personally delivered on February 26, 2009, a signed 2005 tax return to an IRS agent in Columbus, Ohio. Petitioner testified that the return was accepted but that the agent refused to provide him with proof of receipt. Without proper substantiation, we find petitioner's assertion that he filed

(continued...)

[*15] 2010, Form 1040X constitutes his first filed return for his 2005 tax year. However, this return is not timely. Because petitioner did not file a valid 2005 tax return on or before April 17, 2006, we hold that he is liable for an addition to tax under section 6651(a)(1). Additionally, petitioner has not offered any documentary or testimonial evidence to establish that his late filing was due to reasonable cause and not due to willful neglect. See sec. 6651(a)(1). Accordingly, we sustain the section 6651(a)(1) addition to tax but note that because the parties have made several concessions, respondent's original section 6651(a)(1) addition to tax computation must be adjusted to reflect those changes.

3. Section 6662 Accuracy-Related Penalty

Respondent determined that petitioner is liable for a section 6662(a) accuracy-related penalty of $34,682 for petitioner's 2005 tax year. Section 6662(a) and (b)(1) and (2) permits the application of an accuracy-related penalty in the amount of 20% to any portion of an underpayment which is attributable to, among other things, negligence or intentional disregard of rules or regulations or any substantial understatement of income tax. Section 6662(c) defines

---

[6](...continued)
a 2005 tax return on February 26, 2009, unconvincing. Furthermore, to the extent that petitioner could substantiate the filing of this return on February 26, 2009, he remains liable for the sec. 6651(a)(1) penalty.

[*16] "negligence" as any failure to make a reasonable attempt to comply with the provisions of the Code. See also sec. 1.6662-3(b)(1), Income Tax Regs. A substantial understatement of income tax is defined as an understatement of tax for the taxable year that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The Commissioner bears the burden of production concerning the imposition of penalties and must provide sufficient evidence indicating that it is appropriate to impose the penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies his burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is improper due to reasonable cause. Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

A section 6662(a) accuracy-related penalty is applicable only where a tax return has been filed. Sec. 6664(b). As discussed previously, petitioner's filed September 1, 2010, Form 1040X constitutes a return for the 2005 tax year. Respondent's issuance of a second notice of deficiency was based on petitioner's September 1, 2010, Form 1040X. Therefore the application of a section 6662(a) accuracy-related penalty is appropriate if petitioner's underpayment is attributable to negligence or a substantial understatement of income tax.

[*17] Respondent determined a $176,016 deficiency in petitioner's 2005 income tax. Petitioner's September 1, 2010, Form 1040X--which is the basis of the deficiency--reports no income tax due for 2005. As held above, petitioner is entitled to an additional deduction of $13,404. However, the understatement of income tax exceeds the greater of 10% of the tax required to be shown on petitioner's return or $5,000. Therefore, petitioner's understatement is substantial.

Reasonable Cause

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. See Higbee v. Commissioner, 116 T.C. at 448. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner has the burden of proving that the penalty is inappropriate because of reasonable cause under section 6664. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447. Petitioner has failed to prove that the penalty is inappropriate because of reasonable cause. Accordingly, we sustain the section 6662(a) accuracy-related penalty for petitioner's 2005 tax year.

**[\*18]** In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.